IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; LAVELLE LEMON, MARLON REID, LAURETHA CELESTE SIMS, PATRICIA SMITH, COLEY TYSON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF GEORGIA and BRIAN KEMP, in his official capacity as Secretary of the State for the State of Georgia <br><br> Defendants | CA No. 1:17cv01427-TCB-WSD-BBM |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT............................................................................................2

     A.    The Court Has Subject Matter Jurisdiction Over Plaintiffs'
           Section 2 Claim ......................................................................3

     B.    Plaintiffs Have Stated a Claim for Intentional Discrimination ............7

     C.    Plaintiffs Have Stated a Political Gerrymandering Claim .................13

III.  CONCLUSION.........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alabama Legislative Black Caucus v. Alabama*,
  No. 2:12-cv-691, 2012 WL 6706665 (M.D. Ala. Dec. 26, 2012) .......................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................2

*Bartlett v. Strickland*,
  556 U.S. 1 (2009)................................................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................2, 12

*Broward Citizens for Fair Dists. v. Broward Cty.*,
  No. 12-60317-CIV, 2012 WL 1110053 (S.D. Fla., Apr. 3, 2012) ....................10

*Burton v. City of Belle Glade*,
  178 F.3d 1175 (11th Cir. 1999) .......................................................................8, 9

*Cano v. Davis*,
  211 F. Supp. 2d 1208 (C.D. Cal. 2002) .......................................................10, 13

*City of Boerne v. Flores*,
  521 U.S. 507 (1997)..............................................................................................5

*Comm. for a Fair and Balanced Map v. Ill. State Bd. of Elections*,
  No. 1:11-CV-5065, 2011 WL 5185567 (N.D. Ill., Nov. 1, 2011)...............10, 13

*Coniglio v. Iqual Corp.*,
  No. 8:15-CV-2406-T-33AEP, 2015 WL 8521288 (M.D. Fla. Dec.
  3, 2015) .............................................................................................................18

*Conley v. Gibson*,
  355 U.S. 41 (1957)................................................................................................2

*Cooper v. Harris*,
  --- S. Ct. ---, No. 15–1262, 2017, WL 2216930 (U.S. May 22,
  2017) ................................................................................................................1, 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Davis v. Bandemer*,
    478 U.S. 109 (1986).........................................................................13

*Gaffney v. Cummings*,
    412 U.S. 735 (1973).........................................................................16

*Garza v. County of Los Angeles*,
    918 F.2d 763 (9th Cir. 1990) .......................................................8, 10

*Gissendaner v. Ga. Dep't of Corr.*,
    779 F.3d 1275 (11th Cir. 2015) ......................................................18

*Greater Birmingham Ministries v. Alabama*,
    No. 2:15-CV-02193-LSC, 2017 WL 782776 (N.D. Ala. Mar. 1,
    2017) ...............................................................................................4

*Growe v. Emison*,
    507 U.S. 25 (1993)............................................................................9

*Hall v. La.*,
    974 F. Supp. 2d 944 (M.D. La. 2013)..............................................6

*Hall v. Louisiana*,
    983 F. Supp. 2d 820 (M.D. La. 2013)..............................................3

*Johnson v. DeSoto County Board of Commissioners*,
    72 F.3d 1556 (11th Cir. 1996) ................................................7, 8, 13

*Johnson v. Hamrick*,
    296 F.3d 1065 (11th Cir. 2002) ........................................................9

*Lewis v. Bentley*,
    No. 2:16-CV-690-RDP, 2017 WL 432464 (N.D. Ala. Feb. 1,
    2017), appeal filed ..........................................................................4

*Lopez v. Monterey Cty.*,
    525 U.S. 266 (1999)..........................................................................5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*LULAC v. Perry,*
  548 U.S. 399 (2006)..............................................................................13

*Mixon v. State of Ohio,*
  193 F.3d 389 (6th Cir. 1999) .............................................................3, 6

*Morse v. Republican Party of Virginia,*
  517 U.S. 186, 232 (1996).........................................................................4

*Nabors v. Transouth Fin. Corp.,*
  928 F. Supp. 1085 (M.D. Ala. 1996)...................................................14

*Perez v. Abbott,*
  2017 WL 1787454 (W.D. Texas, May 2, 2017)................................8, 9

*Reaves v. U.S. Dep't of Justice,*
  355 F. Supp. 2d 510 (D.D.C. 2005).......................................................6

*Shelby County, Alabama v. Holder,*
  133 S. Ct. 2612 (2013)........................................................................5, 6

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,*
  305 F.3d 1293 (11th Cir. 2002) .............................................................7

*Terrebonne Par. NAACP v. Jindal,*
  154 F. Supp. 3d 354, 359 (M.D. La. 2015) ..........................................7

*Thornburg v. Gingles,*
  478 U.S. 30 (1986).................................................................... 2, passim

*Tomco Equip. Co. v. Se. Agri-Sys., Inc.,*
  542 F. Supp. 2d 1303 (N.D. Ga. 2008)................................................18

*Vieth v. Jubelirer,*
  541 U.S. 267 (2004)...................................................................13, 15, 16

*Village of Arlington Heights v. Metro. Housing Dev. Corp.,*
  429 U.S. 252 (1977)................................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Washington v. Davis*,
   426 U.S. 229 (1976)..............................................................8

*Whitford v. Gill*,
   218 F. Supp. 3d ..............................................2, 14, 16, 17

*Williamson v. Georgia Dep't of Human Res.*,
   150 F. Supp. 2d 1375 (S.D. Ga. 2001) ...............................6

**FEDERAL STATUTES**

42 U.S.C. § 1983 ....................................................................3

52 U.S.C. § 10301 ..................................................................4

Americans with Disabilities Act ............................................6

Religious Freedom Restoration Act........................................5

Voting Rights Act § 2 ................................................ 1, passim

Voting Rights Act § 5 ..............................................................5

**LEGISLATIVE MATERIALS**

S.Rep. No. 97–417 at 30 .........................................................4

## I.   __INTRODUCTION__

Defendants the State of Georgia and Brian Kemp, the Secretary of State of Georgia, have moved to dismiss a limited subset of the claims set out in Plaintiffs' Complaint.  Defendants do not dispute that Plaintiffs—the Georgia State Conference of the NAACP and individual African-American voters—have stated a claim under the Fourteenth and Fifteenth Amendments against Defendant Kemp for racial gerrymandering of Georgia House Districts 105 and 111 via H.B. 566 (count two).[1]  But Defendants argue that Plaintiffs cannot state a racial gerrymandering claim against the State under Section 2 of the Voting Rights Act because of sovereign immunity, and that Plaintiffs do not state an intentional discrimination claim or a partisan gerrymandering claim against either the State or Defendant Kemp (counts one and three).

Defendants are wrong on all counts.  It is well-established under Supreme Court precedent that Section 2 abrogates state sovereignty, as the lower federal courts have properly recognized.  Defendants likewise misstate the standard

---

[1] It is with good reason that Defendants do not dispute that Plaintiffs have adequately stated a racial gerrymander claim in count two.  The Supreme Court recently reaffirmed in *Cooper v. Harris*, --- S. Ct. ---, No. 15–1262, 2017, WL 2216930 (U.S. May 22, 2017), that a racial gerrymander claim is actionable when legislators place a significant number of voters within or without a district predominantly because of their race, regardless of the legislators' ultimate objective—including when "race is meant to function as a proxy for other (including political) characteristics."  *Id.* at *15 n.7.

applicable to Plaintiffs' intentional discrimination claim, ignoring that the standard adopted in *Thornburg v. Gingles*, 478 U.S. 30 (1986), is applied differently where there are allegations of intentional discrimination than where there are allegations only of discriminatory effect.  Finally, Defendants' arguments regarding partisan gerrymandering rest on irrelevant distinctions with *Whitford v. Gill*, 218 F. Supp. 3d. 837 (W.D. Wis. 2016), that misread that decision.  The motion should be denied.

## II.   <u>ARGUMENT</u>

On a motion to dismiss, plaintiffs must provide "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plaintiffs' claims satisfy this standard.

### A.   The Court Has Subject Matter Jurisdiction Over Plaintiffs' Section 2 Claim

Plaintiffs' first cause of action alleges that Defendants have violated both Section 2 of the Voting Rights Act and 42 U.S.C. § 1983 by enacting H.B. 566 for a racially discriminatory purpose.  In response, the State asserts that Eleventh Amendment sovereign immunity bars this cause of action as brought against the State.[2]  Mot. 2.  Although Plaintiffs agree that a Section 1983 claim may not be brought against the State as a sovereign, the State's sovereign immunity argument does not defeat Plaintiffs' Section 2 claim.

Eleventh Amendment sovereign immunity is "not absolute."  *Hall v. Louisiana*, 983 F. Supp. 2d 820, 829 (M.D. La. 2013).  To determine whether Congress has effected a valid abrogation of state sovereign immunity, courts examine (1) whether Congress intended to do so; and (2) whether Congress acted pursuant to a valid power.  *Mixon v. State of Ohio*, 193 F.3d 389, 398 (6th Cir. 1999).  Here, the State does not even attempt to argue that Congress was not acting pursuant to a valid power when it abrogated state sovereignty with regard to Section 2 of the Voting Rights Act.  Rather, the State argues only that it is not clear whether Congress intended to abrogate sovereign immunity.

---

[2] Defendants do not assert sovereign immunity with respect to Defendant Kemp.

3

The State, relying on two recent Northern District of Alabama opinions, contends that, because the private right of action to enforce the Voting Rights Act is implied, it is unclear whether Congress intended to abrogate state sovereign immunity.  Mot. 7 (citing *Greater Birmingham Ministries v. Alabama*, No. 2:15-CV-02193-LSC, 2017 WL 782776, at *12 (N.D. Ala. Mar. 1, 2017); *Lewis v. Bentley*, No. 2:16-CV-690-RDP, 2017 WL 432464, at *9-10 (N.D. Ala. Feb. 1, 2017), appeal filed March 3, 2017).  The fact that the private right of action is implied does not, however, lessen the clarity of Congress's intent to abrogate state sovereign immunity.

First, the private right of action to bring a Section 2 claim has been affirmed by Congress and recognized by the Supreme Court.  *See Morse v. Republican Party of Virginia,* 517 U.S. 186, 232 (1996) ("Congress has not only ratified *Allen*'s construction of § 5 in subsequent reenactments . . . but extended its logic to other provisions of the Act.  Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'") (citing S.Rep. No. 97–417 at 30).  Second, Section 2 on its face imposes restraints on state action.  It prohibits "any State or political subdivision" from discriminating on the basis of race.  52 U.S.C. § 10301.  Thus, Congress has spoken and clearly intended to create a private right

of action that is enforceable against the State for claims of race-based

discrimination.  As such, it has abrogated sovereign immunity for Section 2 claims.

Moreover, both the Supreme Court and the lower courts have affirmed that

the Voting Rights Act effected a valid abrogation of state sovereignty.  Prior to

*Shelby County, Alabama v. Holder,* 133 S. Ct. 2612 (2013), the Supreme Court

consistently held that the Voting Rights Act effected a valid abrogation of state

sovereignty.  *See, e.g.*, *Lopez v. Monterey Cty.*, 525 U.S. 266, 284–85, (1999)

("[T]he Voting Rights Act, by its nature, intrudes on state sovereignty. The

Fifteenth Amendment permits this intrusion, however . . . ."); *see also City of*

*Boerne v. Flores,* 521 U.S. 507, 518 (1997) (comparing the Religious Freedom

Restoration Act to the Voting Rights Act and noting that the Court has "concluded

that other measures protecting voting rights are within Congress' power to enforce

the Fourteenth and Fifteenth Amendments, despite the burdens those measures

placed on the States").

Although *Shelby County* overturned prior rulings regarding the coverage

formulas under Section 5 of the Voting Rights Act, it did not alter the Court's

determination that other enactments under Section 5 as well as the other sections of

the Act, including Section 2, validly abrogated state sovereignty.  In fact, *Shelby*

*County* noted that Section 2 permits "[b]oth the Federal Government and

individuals" to bring enforcement suits, and that "Section 2 is permanent, applies

nationwide, and is not at issue in this case." *Shelby Cty.,* 133 S. Ct. at 2619; *see also id.* at 2631 ("Our decision in no way affects the permanent, nationwide ban on racial discrimination in voting found in § 2.").

The majority of lower courts have also concluded that the Voting Rights Act abrogates state sovereign immunity.  In *Mixon v. State of Ohio,* 193 F.3d 389, the Sixth Circuit considered whether it lacked jurisdiction to hear a challenge under Section 2 of the Voting Rights Act.  The court held that it did have such jurisdiction, finding that Congress had intended to abrogate the states' sovereign immunity under the Voting Rights Act.  Pointing to the "language and purpose of the statute," *Mixon* held that Section 2 "specifically prohibits 'any State or political subdivision' from discriminating against voters on the basis of race."  *Id.* at 398; *see also Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 516 (D.D.C. 2005) ("The inescapable conclusion is that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); *Williamson v. Georgia Dep't of Human Res.*, 150 F. Supp. 2d 1375, 1381 (S.D. Ga. 2001) (comparing the Americans with Disabilities Act to the Voting Rights Act and noting that, with the Voting Rights Act, Congress abrogated state sovereign immunity); *Hall v. La.*, 974 F. Supp. 2d 944, 953 (M.D. La. 2013) (in a Section 2 challenge, holding that "Congress has abrogated the states' sovereign immunity for claims arising under

6

the Voting Rights Act"); *Terrebonne Par. NAACP v. Jindal*, 154 F. Supp. 3d 354, 359 (M.D. La. 2015) (similar).

In sum, the courts have made clear that Congress intended to abrogate state sovereign immunity with regard to Section 2 of the Voting Rights Act. Accordingly, the Court has jurisdiction over Plaintiffs' Section 2 claim against the State.

**B.      Plaintiffs Have Stated a Claim for Intentional Discrimination**

Defendants are correct that, in order to state a claim for intentional discrimination under the Fourteenth Amendment and Section 2 of the Voting Rights Act, Plaintiffs must allege some discriminatory effect.  Defendants are wrong, however, that Plaintiffs have failed to do so adequately.[3]

Contrary to Defendants' argument, Plaintiffs' allegations need not satisfy all three *Gingles* preconditions in order to state a claim for intentional discrimination. None of the cases cited by Defendants supports their argument.  In *Johnson v. DeSoto County Board of Commissioners*, 72 F.3d 1556 (11th Cir. 1996), the Eleventh Circuit did hold that discriminatory intent alone is not enough to prove a

---

[3] Defendants' criticism of Plaintiffs for incorporating their factual allegations into each of their three claims for relief is specious.  *See* Mot. 9.  Essentially all the factual allegations are material to all three claims, such that doing otherwise would have required a complaint nearly three times the length.  This complaint bears no resemblance whatsoever to the "typical shotgun complaint" that has been criticized by the Eleventh Circuit.  *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Section 2 vote-dilution claim; the plaintiff must also prove *some* discriminatory effect.  *Id*. at 1561-1564.[4]  In so holding, however, the court in *Johnson* nowhere suggested that an intentional vote-dilution claim requires satisfaction of all three *Gingles* preconditions.  In *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999), the Eleventh Circuit first held that "[Plaintiffs] have failed to raise a genuine issue of material fact as to whether the City's 1995 decision was racially motivated," *id*. at 1195; in other words, there was insufficient evidence of discriminatory intent.  Only then, after holding that the plaintiffs *did not have* an intentional-discrimination claim, did the court address whether they had satisfied the *Gingles* requirements for a discriminatory-effects vote-dilution claim.  The other three cases cited by Defendants refer to Section 2 vote dilution claims alleging only a discriminatory effect under the results test and are therefore irrelevant; in any event, none of them involved an intentional vote-dilution claim. *See Cooper v. Harris*, --- S. Ct. ---, 2017 WL 2216930 (Fourteenth Amendment racial-gerrymandering case in which the need to comply with Section 2 was

---

[4] Disproportionate impact—whether the action "bears more heavily on one race than another"—is one of the factors articulated in *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), for determining whether an action was adopted with a discriminatory purpose.  *Id*. at 266.  This factor is entirely distinct from and does not require proving the *Gingles* preconditions.  *Compare id*. (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)), *with Garza v. County of Los Angeles*, 918 F.2d 763, 771 (9th Cir. 1990); *Perez v. Abbott*, 2017 WL 1787454 at *55 (W.D. Texas, May 2, 2017).

asserted as a defense); *Growe v. Emison*, 507 U.S. 25 (1993) (discriminatory-effects vote-dilution claim); *Johnson v. Hamrick*, 296 F.3d 1065 (11th Cir. 2002) (same).[5]

Numerous courts, moreover, have held that an intentional vote-dilution claim does *not* require satisfaction of all three *Gingles* preconditions.  Most recently, a three-judge district court, after surveying the existing precedent, held, in language directly applicable here:

> [W]hen discriminatory purpose (intentional vote dilution) is shown, a plaintiff need not satisfy the first *Gingles* precondition to show discriminatory effects.  The Court thus rejects Defendants' argument that Plaintiffs can show intentional vote dilution through packing and cracking only if they show that it prevented the creation of an additional CVAP-majority district.  If plaintiffs had to satisfy the *Gingles* test, there would be little point in allowing them to alternatively pursue intentional discrimination claims. . . .  However, plaintiffs still must show some discriminatory effect, and in making that determination, the Court will consider the other § 2 *Gingles* and totality-of-the-circumstances factors.

*Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 1787454 at *55 (W.D. Tex., May 2, 2017); *see also Alabama Legislative Black Caucus v. Alabama*, No. 2:12-cv-691, 2012 WL 6706665, at *4 (M.D. Ala. Dec. 26, 2012) (reviewing sufficiency of plaintiffs' Section 2 intentional dilution claim).

---

[5] The case law also does not support an argument that satisfaction of any of the *Gingles* preconditions is required on an equal-protection claim under the Fourteenth Amendment, as opposed to a Section 2 claim.  All that is required on the Fourteenth Amendment claim is some showing of discriminatory effect. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999).

Similarly, in *Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990), the Ninth Circuit held that, in an intentional vote-dilution case, plaintiffs need not satisfy the first *Gingles* precondition "that they could have constituted a majority in a single-member district as of [the date of redistricting]." *Id.* at 771. It stated:

> To impose [this] requirement … would prevent any redress for districting which was deliberately designed to prevent minorities from electing representatives in future elections governed by that districting. This appears to us to be a result wholly contrary to Congress' intent in enacting Section 2 of the Voting Rights Act and contrary to the equal protection principles embodies in the fourteenth amendment.

*Id.*; *see also Broward Citizens for Fair Dists. v. Broward Cty.*, No. 12-60317-CIV, 2012 WL 1110053, at *4-6 (S.D. Fla., Apr. 3, 2012) (rejecting argument that an intentional vote-dilution claim failed because the plaintiffs could not satisfy first *Gingles* precondition); *Comm. for a Fair and Balanced Map v. Ill. State Bd. of Elections*, No. 1:11-CV-5065, 2011 WL 5185567, at *4 (N.D. Ill., Nov. 1, 2011) (holding that "the first *Gingles* factor is appropriately relaxed when intentional discrimination is shown"); *Cano v. Davis*, 211 F. Supp. 2d 1208, 1249 (C.D. Cal. 2002) (holding that, "where invidious intent exists in a vote dilution case, it may be appropriate to relax the first or even second of the *Gingles* pre-conditions").

Thus, it is clear that Plaintiffs, having alleged intentional discrimination, need not satisfy the first *Gingles* precondition: that the minority group be "sufficiently large and geographically compact to constitute a majority in a single-

member district." *See Gingles*, 478 U.S. at 50-51.  Defendants' entire argument in that regard is wrong and immaterial.  Indeed, under Defendants' theory of the case, the State would be free to intentionally discriminate against voters on the basis of race in redistricting all it wants as long as the victimized racial group(s) was not large enough to constitute a majority in the district(s) in question.  This theory is fundamentally at odds with the Fourteenth and Fifteenth Amendments.

Assuming that Plaintiffs must still satisfy the second and third *Gingles* preconditions—that the minority group is "politically cohesive" and that the majority votes "sufficiently as a bloc to enable it … usually to defeat the minority's preferred candidate," *id*. at 90—or some "relaxed" version of those preconditions, Plaintiffs' allegations more than suffice.  Indeed, Defendants' arguments about those two preconditions amount to nothing more than a reiteration of the argument that Plaintiffs must satisfy the *first* precondition.

Thus, Defendants argue, with respect to the second precondition, that "[p]olitical cohesion is particularly important where Plaintiffs seek to establish the first *Gingles* precondition with a minority coalition district."  Mot. 14.  They assert that Plaintiffs have not alleged "facts sufficient to show that *Plaintiffs' minority coalition* is politically cohesive."  *Id*. (emphasis added).  But Plaintiffs need not do that, because, as explained above, they need not satisfy that precondition.  Defendants do not even dispute that Plaintiffs allege that *African-Americans* in the

11

relevant geographic areas are a politically cohesive minority group.  *See* Compl.

¶¶ 5, 37, 59, 66, 74, 82, 93 (all alleging that voting in Districts 105 and 111 is

racially polarized).  That is all that is required here to satisfy the second *Gingles*

precondition or a relaxed version thereof.

With respect to the third *Gingles* precondition—bloc voting by whites—

Defendants acknowledge that Plaintiffs expressly allege that voting in the 2012,

2014, and 2016 elections was racially polarized.  Mot. 16.  Defendants assert those

allegations are "conclusory," but notice pleading does not require that Plaintiffs

allege the specific percentages of white voters who cast Republican ballots and

African-American voters who cast Democratic ballots in order to survive a motion

to dismiss.  *See Twombly*, 550 U.S. at 555 (requiring that plaintiffs "give the

defendant fair notice of what the … claim is and the grounds upon which it rests").

Defendants then quote at length from a passage in *Bartlett v. Strickland*, 556 U.S. 1

(2009), that relates to whether a minority group may, in a case not involving

intentional discrimination, rely on "crossover" voting by whites to satisfy the *first*

*Gingles* precondition.  Mot. 16-17.  That passage is irrelevant to whether Plaintiffs

have adequately alleged that whites vote sufficiently as a bloc so as usually to

defeat African-Americans' preferred candidates.

Finally, several courts, including the Eleventh Circuit, have emphasized that

evidence of an intent to discriminate may itself be powerful evidence of

discriminatory effect sufficient to support a Section 2 claim.  As the Eleventh

Circuit stated, again in language directly applicable here:  "Where it can be

inferred, as it often can be, that the enactors were in a good position to know the

effect their actions would have, the fact that the enactment was motivated by a

desire to produce discriminatory results will often be strong, albeit circumstantial,

evidence that such results were achieved."  *Johnson*, 72 F.3d at 1565; *see also*

*Comm. for a Fair and Balanced Map*, 2011 WL 5185567, at *4 (same); *Cano v.*

*Davis*, 211 F. Supp. 2d at 1249 ("where invidious intent exists in a vote dilution

case, it may be appropriate . . . to consider intent in connection with the 'totality of

the circumstances' inquiry").  Thus, in considering whether Plaintiffs have

satisfied their obligation to plead discriminatory effect adequately, the Court must

consider, among other things, Plaintiffs' detailed allegations concerning the

discriminatory intent of Georgia legislators.

### C.      Plaintiffs Have Stated a Political Gerrymandering Claim

The State acknowledges that the Supreme Court has made clear Plaintiffs

may bring a political gerrymandering claim under the Fourteenth Amendment.

Mot. 18-20; *see generally Davis v. Bandemer*, 478 U.S. 109 (1986); *Vieth v.*

*Jubelirer*, 541 U.S. 267, 307 (2004) (Kennedy, J., concurring in the judgment)

(partisan gerrymandering violates the Fourteenth Amendment when it is

"invidious"); *LULAC v. Perry*, 548 U.S. 399, 420 (2006) (Kennedy, J.), 466

13

(Stevens, J., concurring in part and dissenting in part), and 483 (Souter, J., concurring in part and dissenting in part).

Despite this admission, the State argues that Plaintiffs cannot state a claim because the Supreme Court has not agreed on the *standard* applicable to such claims.  On a motion to dismiss, however, it is the moving party's burden to show that the plaintiff's claim necessarily fails as a matter of law.  *See, e.g.*, *Nabors v. Transouth Fin. Corp.*, 928 F. Supp. 1085, 1086 (M.D. Ala. 1996).  The mere fact that the Supreme Court has not yet agreed on the standard applicable to political gerrymandering claims does not show that Plaintiffs' political gerrymandering claim—or, indeed, *any* political gerrymandering claim—necessarily fails as a matter of law.  It shows only that there is some uncertainty regarding how such claims would be adjudicated by the Supreme Court.

The State further argues that Plaintiffs have pled insufficient facts to satisfy, for purposes of a motion to dismiss, the standard set out in *Whitford v. Gill*.  The State asserts, erroneously, that the "only direct allegation that Plaintiffs make" regarding *Whitford* is the legal conclusion that the test has been satisfied.  Mot. 22. In making this assertion, the State fails to consider the very next paragraph of Plaintiffs' Complaint, which includes the factual allegations that "H.B. 566 intentionally and surgically removes Democratic voters from [Districts 105 and 111] for the purpose of making them noncompetitive and ensuring electoral victory

for their Republican incumbents," and that "[t]here was no legitimate legislative reason for passing this mid-decade redistricting plan, particularly when a plan that complied with the U.S. Constitution and the Voting Rights Act had been enacted a few years beforehand." Compl. ¶ 103. The State also ignores Plaintiffs' allegations in the following paragraphs, that "[p]artisan affiliation and race are highly correlated in Georgia" and that "[t]he proponents of H.B. 566 utilized racial demographics and analyses of past elections to predict the level of support for Democratic candidates and, based on the perceived content of voters' political speech, drew Georgia House districts for the purpose of minimizing the electoral strength of voters who seek to be represented by Democratic legislators." *Id.* ¶¶ 104-105. And the State ignores the many additional allegations in the Complaint in support of these allegations, detailing the redistricting process and results. *See id.* ¶¶ 44-86.

Plaintiffs' allegations are sufficient to make a prima facie case that political considerations "were applied in an invidious manner or in a way unrelated to any legitimate legislative objective." *Vieth*, 541 U.S. at 307 (Kennedy, J., concurring in the judgment); *see also* Compl. ¶ 102. They are also sufficient to make a prima facie case that the gerrymandering here "(1) [wa]s intended to place a severe impediment on the effectiveness of the votes of individual citizens on the basis of their political affiliation, (2) ha[d] that effect, and (3) cannot be justified on other,

legitimate legislative grounds." *Whitford*, 218 F. Supp. 3d at 884.  The State's arguments to the contrary seek to draw inapposite and irrelevant distinctions with *Whitford*.

First, the State argues that *Whitford* addressed a statewide districting plan and thus has no bearing here.  But *Whitford* identifies no such limitation on its application.  Neither has the Supreme Court limited political gerrymandering claims to statewide challenges.  Indeed, it has suggested that the relevant questions regarding political gerrymandering concern the nature of the political favoritism, not the geographical scope of the gerrymander.  *See Vieth*, 541 U.S. at 293 (plurality opinion) (suggesting partisan gerrymandering is unlawful if there is "an *excessive* injection of politics"); *id.* at 314-17 (Kennedy, J., concurring in the judgment) (suggesting that courts look to whether a gerrymander subjects voters from one party to disfavored treatment by reason of their political views); *see also* Mot. 23 (citing the *Vieth* plurality opinion).  It is not to the contrary, moreover, that states may take politics into account in redistricting plans, particularly where the plan "attempt[s] to reflect the relative strength of the parties in locating and defining election districts." *Gaffney v. Cummings*, 412 U.S. 735, 752 (1973); *see also* Mot. 21.  The claim here is that the gerrymander was invidious and without any legitimate justification—it was a mid-decade redistricting that employed racial means to achieve a partisan end when Republican candidates almost lost to African

American candidates in districts that were becoming increasingly African American—not merely that the State considered politics in an effort to reflect the relative strength of the parties.

Second, the State asserts that the "efficiency gap" measure so "permeated" the *Whitford* decision that "any subsequent plaintiff seeking to use the *Whitford* test must at least make allegations concerning the efficiency gap." Mot. 24. But, as the State acknowledges, *Whitford* did not adopt any requirements regarding the efficiency gap, let alone a pleading rule of the sort the State advances. *Id.* *Whitford*'s concern with the efficiency gap reflects the statewide nature of the claims at issue there: the efficiency gap denoted the "difference between the parties' respective wasted votes in an election, divided by the total number of votes cast," and the plaintiffs in *Whitford* alleged that a statewide districting plan produced a significantly pro-Republican efficiency gap. *Whitford*, F. Supp. 3d at 854-55. The statewide efficiency gap measure does not have similar salience here, where the claim is that H.B. 566 targeted indicators of partisan affiliation in a mid-decade redistricting plan that, with no legitimate justification, created two safe seats for Republican incumbents and thereby impermissibly minimized the electoral strength of Democratic voters in those districts.

There is no reason, moreover, to stay this claim pending the Supreme Court's review of *Whitford*. Plaintiffs would be prejudiced by delay, as elections

17

loom in 2018 and there are significant limits on post-election relief.  *See Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008).  A stay, moreover, would not materially simplify the factual issues in this case, as Plaintiffs' partisan and racial gerrymandering claims are closely intertwined.  *See id.* at 1308.  The mere fact that "important developments" in the law "may be on the horizon" does not warrant a stay.  *Coniglio v. Iqual Corp.*, No. 8:15-CV-2406-T-33AEP, 2015 WL 8521288, at *1 (M.D. Fla. Dec. 3, 2015) (declining a stay on this basis).  "Rather, '[u]ntil the Supreme Court issues a decision that actually changes the law, [courts] are duty-bound to apply [circuit] precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits.'"  *Id.* (quoting *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015)).

## III.  **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss should be denied with prejudice.

Respectfully submitted, this 13th day of June, 2017.

By:  /s/ William V. Custer
William V. Custer, Georgia Bar No. 202910
Jennifer B. Dempsey, Georgia Bar No. 217536
Bryan Cave LLP
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA  30309-3488

Telephone:   (404) 572-6600
Fax:             (404) 572-6999
Email:         *bill.custer@bryancave.com*
                   *jennifer.dempsey@bryancave.com*

Bradley S. Phillips (*admitted pro hac vice*)
Gregory D. Phillips (*admitted pro hac vice*)
John F. Muller (*admitted pro hac vice*)
Thomas P. Clancy (*admitted pro hac vice*)
Munger, Tolles, & Olson LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, CA  90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702
Email:         *Bradley.Phillips@mto.com*
                   *Gregory.Phillips@mto.com*
                   *John.Muller@mto.com*
                   *Thomas.Clancy@mto.com*

Jon Greenbaum (*admitted pro hac vice*)
Ezra D. Rosenberg, Esq. (*admitted pro
      hac vice*)
Julie Houk, Esq. (*admitted pro hac vice*)
John Powers, Esq. (*admitted pro hac vice*)
Lawyers' Committee for Civil Rights Under
      Law
1401 New York Ave., NW, Suite 400
Washington, DC  20005
Telephone:   (202) 662-8600
Facsimile:   (202) 783-0857
Email:         *jgreenbaum@lawyerscommittee.org*
                   *erosenberg@lawyerscommittee.org*
                   *jhouk@lawyerscommittee.org*
                   *jpowers@lawyerscommittee.org*

Counsel for Plaintiffs

19

**LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I certify that this pleading has been prepared with Times New Roman, 14 pt.

font, as approved by the Court in L.R. 5.1(C), N.D. Ga.

Respectfully submitted, this 13th day of June, 2017.

By:   /s/ William V. Custer
William V. Custer, Georgia Bar No. 202910
Bryan Cave LLP
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Fax:            (404) 572-6999
Email:        *bill.custer@bryancave.com*

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2017, I filed the foregoing

PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO

DISMISS with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

<u>s/ William V. Custer</u>
William V. Custer, Georgia Bar No. 202910
Bryan Cave LLP
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Fax:             (404) 572-6999
Email:          *bill.custer@bryancave.com*

Counsel for Plaintiffs