IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF GEORGIA; et al.,**<br><br>Defendants. | **Civil Action No. 1:17cv01427-TCB-WSD-BBM** |

## PLAINTIFFS' INITIAL DISCLOSURES

Plaintiffs submit their Initial Disclosures pursuant to Fed. R. Civ. Pro. 26(a) and Local Rule 26, as follows:

(1)  State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

**(a) The Cause of Action:**

This is an action to enjoin the State of Georgia and its Secretary of State from enforcing Act No. 251 (2015 Ga. Laws 1413) ("H.B. 566"), insofar as it redistricts Georgia House of Representative Districts 105 and 111.  Plaintiffs allege that H.B. 566:

1

(1) was enacted with a discriminatory purpose and effect in violation of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1983 and Section 2 of the Voting Rights Act of 1965 (52 U.S.C. §10301);

(2) is a racial gerrymander that violates the Fourteenth and Fifteenth Amendments of the United States Constitution because racial considerations predominated with respect to the drawing of the House District 105 and 111 boundary lines and the plan does not satisfy strict scrutiny; and,

(3) is a partisan gerrymander that invidiously and improperly distorts the political process in violation of the Fourteenth Amendment.

**(b) Brief Factual Outline:**

The Georgia House of Representatives is composed of 180 members, each of whom is elected from a single-member district. Traditionally, states adopt a new redistricting plan every ten years, after the decennial Census, so as to comply with the Constitution's "one person, one vote" requirement.

The Georgia legislature, however, has repeatedly sought to amend its post-2010 redistricting plan for its House of Representatives, with the intention of protecting white Republican incumbents and ensuring the election of white Republican candidates.

It most recently did so in 2015, when it passed H.B. 566 in ways that departed from normal procedures. For example, African American legislators serving on reapportionment committees were excluded from the process of determining the changes.

Most importantly, the white Republican majority in the Georgia legislature used race as the predominant factor to move white votes in, and move African-American and other minority voters out, of House Districts 105 and 111 after African-American candidates almost beat white Republican incumbents in those districts and as the changing demographics of the existing districts made it increasingly likely that the incumbents would lose in future elections. Coupled with racially polarized voting in these House Districts, the 2015 redistricting plan intentionally dilutes the voting strength of African-American voters.

Since Georgians do not register to vote by party, and because party in Georgia is closely aligned with race, Georgia used race as a proxy to achieve a partisan end. By conducting an unusual mid-decade redistricting to protect white Republican incumbents at the expense of African-American voters, H.B. 566 represents an invidious partisan gerrymander.

Thus, Plaintiffs contend the redistricting constituted a racial gerrymander and a partisan gerrymander and was done with a racially discriminatory purpose.

Plaintiffs filed this action after the close of the 2017 legislative session because: 1) the results of the November 2016 general election demonstrate that the 2015 redistricting in House Districts 105 and 111 had a discriminatory impact; and 2) the Georgia House passed another redistricting bill (H.B. 515) on March 3, 2017.  If H.B. 515 had been enacted, it would have raised legal issues similar to those in the present case.

**(c) Statement of Legal Issues:**

(1) Whether the redistricting of House Districts 105 and 111 in H.B. 566 was done with a discriminatory purpose and had a discriminatory effect, in violation of Section 2 of the Voting Rights Act of 1965 and the Fourteenth Amendment to the U.S. Constitution.

(2) Whether the redistricting of House Districts 105 and 111 in H.B. 566 constitute an unconstitutional racial gerrymander in violation of the Fourteenth and Fifteenth Amendments because traditional districting principles were subordinated to race and the plans fail to satisfy strict scrutiny.

(3) Whether the redistricting of House Districts 105 and 111 in H.B. 566 constitutes an unconstitutional partisan gerrymander because (1) it invidiously used race as a proxy to change district lines to protect Republican incumbents when no redistricting was required and thus was  intended to place a severe impediment on

the effectiveness of the votes of individual citizens on the basis of their political affiliation, (2) has that effect, and (3) cannot be justified on other, legitimate legislative grounds.

(4) The nature, extent and timing of appropriate remedial relief in the event the Court concludes that Plaintiffs have established liability on any of their three claims for relief.

*(2)   Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.*

The Plaintiffs allege claims under Section 2 of the Voting Rights Act of 1964, 42 U.S.C. § 1983 and the Fourteenth and Fifteenth Amendments to the United States Constitution.

Plaintiffs allege in Count 1 of the Complaint that Defendants enacted H.B. 566 for a racially discriminatory purpose in violation of Section 2 of the Voting Rights Act, 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United States Constitution. To establish a violation of either the Equal Protection Clause of the Fourteenth Amendment, the plaintiffs must prove discriminatory intent. *City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 63, 66-67 (1980); *Rogers v. Lodge*, 458 U.S. at 621.  See also *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 241–42

(1976). Discriminatory purpose may be established by proof that the Defendant used race as a substantial or motivating factor in their decisions. See *Arlington Heights*, 429 U.S. at 265–66.

When discriminatory purpose is shown, Courts have not required Plaintiffs to satisfy the first *Gingles* precondition to show discriminatory effects. See *Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 1787454 at *54-55 (W.D. Tex., May 2, 2017); *Garza v. County of Los Angeles*, 918 F.2d 763, 769-771 (9th Cir. 1990); *Alabama Legislative Black Caucus v. Alabama*, No. 2:12-cv-691, 2012 WL 6706665 *4-5 (M.D. Ala. Dec. 26, 2012); *Comm. for a Fair and Balanced Map v. Ill. State Bd. of Elections*, No. 1:11-CV-5065, 2011 WL 5185567 *3 (N.D. Ill., Nov. 1, 2011); *Cano v. Davis*, 211 F. Supp. 2d 1208, 1249 (C.D. Cal. 2002),

Plaintiffs allege in Count 2 of the Complaint that HB 566 is a racial gerrymander that violates the Fourteenth and Fifteenth Amendment to the U.S. Constitution.  See *Gomillion v. Lightfoot*, 364 U.S. 339 (1960). Racial gerrymandering in violation of the Equal Protection Clause occurs "when (1) race is the 'dominant and controlling' or 'predominant' consideration in deciding 'to place a significant number of voters within or without a particular district,' and (2) the use of race is not 'narrowly tailored to serve a compelling state interest.'" *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1264 (2015).

Plaintiffs may establish a racial gerrymander by showing "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Bethune-Hill v. Virginia State Bd. of Elections*, 137 S. Ct. 788, 792 (2017); *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Cooper v. Harris*, --- S. Ct. ---, No. 15–1262, 2017, WL 2216930 (U.S. May 22, 2017). To show the requisite level of racial predominance, "a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles"—such as compactness, contiguity, or communities defined by shared interests—"to racial considerations." *Miller*, 515 U.S. at 916. Racial gerrymandering "applies district-by-district," and does not require considering district boundary lines across the state as a whole. *Alabama*, 135 S.Ct. at 1265.

Plaintiffs allege a partisan gerrymander claim in Count 3 of the Complaint. A redistricting plan constitutes an unconstitutional racial gerrymander if political classifications "were applied in an invidious manner or in a way unrelated to any legitimate legislative objective." *Vieth v. Jubelirer*, 541 U.S. 267, 307 (Kennedy, J., concurring in the judgment). In *LULAC v. Perry*, 548 U.S. 399 (2006), a majority of the Justices expressed interest in a test for unconstitutional partisan

7

gerrymandering under the Fourteenth Amendment. 548 U.S. at 420 (Kennedy, J.), 466 (Stevens, J., concurring in part and dissenting in part), and 483 (Souter, J., concurring in part and dissenting in part). In *Whitford v. Gill*, No. 15-cv-421-bbc, 2016 WL 6837229 at *35 (W.D. Wis. Nov. 21, 2016), the court held that a redistricting plan is a partisan gerrymander in violation of the Fourteenth Amendment if it "(1) is intended to place a severe impediment on the effectiveness of the votes of individual citizens on the basis of their political affiliation, (2) has that effect, and (3) cannot be justified on other, legitimate legislative grounds."

Illustrative case law relating to the history of discrimination in Georgia may include, but is not limited to, *Johnson v. Miller*, 864 F. Supp. 1354 (S.D. Ga. 1994) *aff'd and remanded*, 515 U.S. 900 (1995); *Brooks v. State Bd. of Elections,* 848 F. Supp. 1548 (S.D.Ga.1994); *Georgia State Conference of the NAACP v. Fayette County Bd. of Comm'rs*, 950 F. Supp. 2d 1294, 1314-16 (N.D. Ga. 2013).

The Plaintiffs note that the case law cited above is illustrative and not intended to be exhaustive. Plaintiffs anticipate they may rely upon additional legal authorities as this litigation progresses.

*(3)     Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)*

*See* Attachment A.

(4)   *Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)*

The Plaintiffs have not yet identified expert witnesses under Fed. R. Civ. P. 26(a)(2). Plaintiffs will amend this response at the appropriate time and in compliance with the Federal Rules of Civil Procedure or other Orders of the Court.

(5)   *Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)*

*See* Attachment C.

(6)   *In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)*

Should the Plaintiffs prevail on their claims, they will seek to recover reasonable attorney's fees and costs associated with the litigation. The amount of such fees and costs increase daily.

*(7)     Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)*

Any applicable insurance agreements are in the possession of Defendants.

*(8)     Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs cause of action and state the basis and extent of such interest.*

Not applicable.

Dated: July 5, 2017                 Respectfully submitted,


                                    By:    s/William V. Custer
                                           William V. Custer, Georgia Bar No. 202910
                                           Jennifer B. Dempsey, Georgia Bar No. 217536
                                           Bryan Cave LLP
                                           One Atlantic Center, Fourteenth Floor
                                           1201 West Peachtree Street, NW
                                           Atlanta, GA  30309-3488
                                           Telephone:  (404) 572-6600
                                           Fax:           (404) 572-6999
                                           Email:       *bill.custer@bryancave.com*
                                                           *jennifer.dempsey@bryancave.com*

                                           Bradley S. Phillips (*admitted pro hac vice)*
                                           Gregory D. Phillips (*admitted pro hac vice*)
                                           John F. Muller (*admitted pro hac vice*)
                                           Thomas P. Clancy (*admitted pro hac vice*)
                                           Munger, Tolles, & Olson LLP
                                           350 South Grand Avenue, Fiftieth Floor
                                           Los Angeles, CA  90071-1560
                                           Telephone:  (213) 683-9100

Facsimile: (213) 687-3702
Email: *Bradley.Phillips@mto.com*
*Gregory.Phillips@mto.com*
*John.Muller@mto.com*
*Thomas.Clancy@mto.com*

Jon Greenbaum (*admitted pro hac vice*)
Ezra D. Rosenberg, Esq. (*admitted pro hac vice*)
Julie Houk, Esq. (*admitted pro hac vice*)
John Powers, Esq. (*admitted pro hac vice*)
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., NW, Suite 400
Washington, DC  20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
Email: *jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*jhouk@lawyerscommittee.org*
*jpowers@lawyerscommittee.org*

Counsel for Plaintiffs

## ATTACHMENT A

| | |
|---|---|
| Plaintiffs Lavelle Lemon, Marlon Reid, Lauretha Celeste Sims, Patricia Smith, and Coley Tyson<br>*Plaintiffs should only be contacted through their counsel.* | Plaintiffs have knowledge of the facts and circumstances supporting the claims alleged in the Complaint and refuting the Defendants' defenses, including, but not limited to, information concerning Georgia's history of discrimination; the racially discriminatory purpose and effect of the subject redistricting plans; and the racial and partisan gerrymandering of HD 105 and 111. |
| Francys Johnson, President of Plaintiff Georgia State Conference of the National Association for the Advancement of Colored People<br>*Mr. Johnson should only be contacted through counsel for Plaintiff Georgia State Conference of the NAACP.* | Mr. Johnson has knowledge of the facts and circumstances supporting the organizational Plaintiff'' claims and refuting the Defendants' defenses, including, but not limited to, information concerning Georgia's history of discrimination; the racially discriminatory purpose and effect of the subject redistricting plans; and the racial and partisan gerrymandering of HD 105 and 111. |
| Candidates who have run for Georgia HD 105 and 111<br><br>*Please note that Donna McLeod, a 2016 candidate for Georgia HD 105, is represented by Plaintiffs' counsel at the Lawyers' Committee for Civil Rights Under Law and should only be contacted through her counsel.* | Plaintiffs are informed and believe and thereon state that the candidates who ran for seats in Georgia HD 105 and 111 are likely to have knowledge of facts and circumstances supporting Plaintiffs' claims, including, but not limited to, information concerning the racially discriminatory purpose and/or effect of the subject redistricting plans; and the racial and partisan gerrymandering of these districts. |
| Carlotta Harrell, 261 Hunting Court, Jonesboro, GA 30236; (770) 597-7544 | Ms. Harrell has knowledge of the facts and circumstances supporting Plaintiffs' claims, including, but not limited to, information Georgia's history of discrimination; the racially discriminatory purpose and effect of the subject redistricting plans; and the racial and partisan |

12

| | |
|---|---|
| | gerrymandering of HD 111. |
| Current and former members of the Georgia legislature involved in the consideration and enactment of redistricting legislation since 2000 | Plaintiffs are informed and believe and thereon state that Georgia legislators involved in the consideration and enactment of state redistricting legislation are likely to have discoverable information about the redistricting process, criteria used in the drawing of districts, consideration of alternative plans, persons and parties having input in the process, and the intent, motives and reasons for the enactment of the redistricting plans in HD 105 and 111. |
| Gina Wright, Executive Director, Georgia Legislative and Congressional Reapportionment Office, 407 Coverdell Legislative Office Building, Atlanta, GA 30334; 404-656-5063 | Plaintiffs are informed and believe and thereon state that Gina Wright (and possibly other employees and agents of the Georgia Legislative and Congressional Reapportionment Office) is/are likely to have discoverable information about the redistricting process, criteria used in the drawing of the districts, consideration of alternative plans, persons and parties having input in the process, and the intent, motives and reasons for the enactment of redistricting plans, including, but not limited to, the drawing of the plan(s) and maps for the redistricting of HD 105 and 111. |
| Andrew J. Welch III, c/o Smith, Welch, Webb & White, 2200 Keys Ferry Court McDonough, GA 30253; 855-505-7999 | Plaintiffs are informed and believe and thereon state that Representative Welch may have discoverable information about the history of discrimination in Henry County, the redistricting process, criteria used in the drawing of the districts, consideration of alternative plans, persons and parties having input in the process, and the intent, motives and reasons for the enactment of redistricting plans for HD 105 and 111. |
| Charles Mobley (address currently unknown to Plaintiffs) and Mark Roundtree, c/o Landmark Communications, 11300 | Plaintiffs are informed and believe and thereon state that Mr. Mobley was a former Chairman of the Henry County GOP and has served as a political consultant and campaign manager for GOP candidates in Georgia. Plaintiffs are also |

13

| | |
|---|---|
| Atlantis Place, Suite F, Alpharetta, GA; (770) 813-1000 | informed and believe that Mark Roundtree is a political consultant for Georgia GOP legislative candidates and legislative affairs. Plaintiffs believe that these individuals may have discoverable information about the Georgia redistricting process, criteria used in the drawing of the districts, consideration of alternative plans, persons and parties having input in the process, and the intent, motives and reasons for the enactment of redistricting plans by the Georgia legislature in HD 105 and 111. |

Plaintiffs note that many other individuals may have information that is relevant to this case. Plaintiffs expect the identities of these individuals to come to light during the discovery period in this case. Plaintiffs reserve the right to alter, add to, or amend this list of individuals as discovery progresses, either by amendment to these Disclosures or through the identification of said individuals in depositions or responses to written discovery requests.

## ATTACHMENT C

- The statements of votes cast by voters in elections in Gwinnett and Henry Counties within HD 105 and HD 111 that are maintained by Georgia Secretary of State and/or Gwinnett and Henry Counties;

- Turnout and voter registration data for Gwinnett and Henry Counties within HD 105 and 111 that are maintained by the Georgia Secretary of State and/or Gwinnett and Henry Counties;

- United States Census data for Gwinnett and Henry Counties within HD 105 and 111;

- Social media and internet postings and comments made in reference to Georgia redistricting (public domain);

- News articles and other documents concerning redistricting, racial controversies, and other issues of interest to the minority communities HD 105 and HD 111 (public domain);

- Internet websites created or maintained by the Georgia legislature and the Georgia Legislative and Congressional Redistricting Office, their members and staff;

- Evidence identifying the attendees at redistricting meetings at the Georgia Legislative and Congressional Reapportionment Office which should be

maintained by the Legislature and/or the Legislative and Congressional Reapportionment Office;

- Public comments and alternative plans submitted during the course of the consideration and enactment of redistricting plans for Georgia HD 105 and 111 which should be maintained by the Legislature, Georgia Legislative and Congressional Reapportionment Office and/or their respective staffs.

- Submissions made for preclearance of Georgia redistricting plans by the United States Department of Justice under Section 5 of the Voting Rights Act of 1965;

- Documents related to the consideration and adoption of redistricting plans for Georgia HD 105 and 111 maintained by the Georgia Legislature; Legislative and Congressional Reapportionment Office; Georgia Secretary of State's Office;

- Georgia Public Broadcasting recordings of Georgia legislative sessions relating to the redistricting of Georgia HD 105 and 111.

- Reports, articles, and other documents describing or analyzing the history of discrimination in Georgia, including in Gwinnett and Henry Counties (public domain);

- Statements made to the press by Georgia legislators in connection with

redistricting (public domain);

- Demographic information, election results, and other data pertaining to Georgia HD 105 and 111 maintained by the Georgia Secretary of State's Office, Georgia Legislature and/or Legislative Redistricting and Reapportionment Office;

- Maps and other documents reflecting districting plans for Georgia HD 105 and 111 maintained by the Georgia Secretary of State's Office, Georgia Legislature and/or Legislative Redistricting and Reapportionment Office.

Plaintiff notes that many other documents are relevant to and discoverable in this case. Plaintiff expects these to come to light during the discovery period of this litigation, and Plaintiff reserves the right to alter, add to, or amend this list of documents as discovery progresses, either by amendment to these Disclosures or through the identification of said documents in depositions or discovery responses.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF GEORGIA, et al.,<br><br>Defendants. | Civil Action No. 1:17cv01427-TCB-WSD-BBM |

**CERTIFICATE OF SERVICE AND**
**<u>COMPLICANCE WITH LOCAL RULE 5.1(C)</u>**

I hereby certify that on this 5th day of July 2017, the foregoing **PLAINTIFFS' INITIAL DISCLOSURES** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record, including:

CHRISTOPHER M. CARR
Attorney General
ANNETTE M. COWART
Deputy Attorney General
RUSSELL D. WILLARD
Senior Assistant Attorney General
CRISTINA CORREIA
Assistant Attorney General

18

JOSIAH B. HEIDT
Assistant Attorney General

I further certify that the foregoing has been prepared in a Times New Roman 14 point font, which is one of the font and point selections approved by the Court in Local Rule 5.1(C).

By: s/William V. Custer
William V. Custer, Georgia Bar No. 202910
Jennifer B. Dempsey, Georgia Bar No. 217536
Bryan Cave LLP
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:  (404) 572-6600
Fax:             (404) 572-6999
Email:         *bill.custer@bryancave.com*
                    *jennifer.dempsey@bryancave.com*