**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| NAACP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO.: |
| | ) | 1:17-CV-1427-TCB-WSD-BBM |
| v. | ) | |
| | ) | |
| BRIAN KEMP, in his official | ) | CONSOLIDATED CASES |
| capacity as Secretary of State of | ) | |
| the State of Georgia, | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| AUSTIN THOMPSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BRIAN KEMP, in his official | ) |
| capacity as Secretary of State of | ) |
| the State of Georgia, | ) |
| | ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**THOMPSON PLAINTIFFS' FIRST AMENDED COMPLAINT IN PART**

In accordance with Local Rule 7.1A, Defendant Brian Kemp, in his official

capacity as Secretary of the State of Georgia, submits this brief in support of his

motion to dismiss the Thompson Plaintiffs' First Amended Complaint [Doc. 20] ("Complaint").

## I.   INTRODUCTION

This motion seeks dismissal of Counts I and II of Plaintiffs' complaint for failure to state a claim.  In addition, Defendant moves to dismiss a number of the individual Plaintiffs because they lack standing to challenge the 2015 legislative act that modified certain Georgia House of Representative Districts.

## STATEMENT OF FACTS

Plaintiffs are ten individuals who allege that they are residents and voters in Gwinnett County, Henry County, Fulton County, Rockdale County, Clayton County, or DeKalb County. Compl. ¶¶ 21-30.

Plaintiffs challenge the Georgia General Assembly's 2015 changes to the redistricting plan for the Georgia House of Representatives, Act No. 251 (2015 Ga. Laws 1413) ("H.B. 566"), on the grounds that it violates Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution. Compl. ¶ 1. H.B. 566 revised the district lines for seventeen districts. H.B. 566, attached as Ex. A.

Plaintiff Thomson states that he lives in HD 105, and Swanson, and Payton state that they live in HD 111. Compl. ¶¶ 21, 22, and 23.  Plaintiffs    Cunningham,

McKenzie, Orange, Snow, Arrey-Mbi, Anderson, and Jackson, none of whom lives in either HD 105 or 111, state that they live in "the Atlanta metropolitan area." Compl. ¶¶ 24, 25, 26, 27, 28, 29, and 30. More specifically, Plaintiffs Cunningham (HD 59), Orange (HD 57), and Jackson (HD 61) state that they live in Fulton County, Plaintiffs Snow (HD 92) and Anderson (HD 90) state that they live in Rockdale County, Plaintiff McKenzie states that she lives in HD 88 in DeKalb County, and Plaintiff Arrey-Mbi states that he lives in HD 75 in Clayton County. *Id*.

Plaintiffs assert three causes of action. In Count I, they assert that H.B. 566 was enacted with a discriminatory purpose as to the changes made to HD 105 and 111, in violation of Sec. 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendment. Compl. ¶¶ 119-128.

In Count II, they assert that H.B. 566 violates "the results prong of Section 2 of the Voting Rights Act." Compl., p. 38. While pointing to the "current district boundaries for the House of Representatives," their allegations appear to be directed to the contention that an additional African American-majority district could have been created "in the Atlanta metropolitan area." *Id*. ¶¶ 129-136.

In Count III, Plaintiffs claim that HDs 105 and 111 are the product of unconstitutional racial gerrymandering. Compl., pp. 40-41, ¶¶ 137-143.

3

The changes made by H.B. 566 affect only the following House Districts:

- District 27, which includes parts of Hall County and White County;

- District 30, which includes parts of Hall County;

- District 53, which includes parts of Cobb County and Fulton County;

- District 55, which includes parts of Fulton County;

- District 59, which includes parts of Fulton County;

- District 60, which includes parts of Clayton County;

- District 73, which includes parts of Fayette County, Henry County, and Spalding County;

- District 104, which includes parts of Gwinnett County;

- District 105, which includes parts of Gwinnett County;

- District 109, which includes parts of Henry County, Newton County, and Rockdale County;

- District 110, which includes parts of Butts County, Henry County, and Newton County;

- District 111, which includes parts of Henry County;

- District 130, which includes parts of Henry County, Lamar County, and Spalding County;

- District 165, which includes parts of Chatham County;

4

- District 166, which includes parts of Bryan County and Chatham County;

- District 176, which includes Atkinson County, Lanier County, and parts of Lowndes County and Ware County; and

- District 177, which includes parts of Lowndes County.

H.B. 566. Plaintiffs define the "Atlanta metropolitan area" to include "Cherokee, Clayton, Cobb, DeKalb, Douglas, Fayette, Fulton, Gwinnett, Henry, and Rockdale" counties. Compl. ¶ 108. No part of Cherokee County, DeKalb County, Douglas County, and Fayette County is affected by H.B. 566, and the portions of Rockdale County that are in HD 109 are not changed by H.B. 566. Moreover, no parts of HD 57, HD 61, HD 75, HD 88, HD 90, and HD 92 are affected by H.B. 566. *See* Exhibit A.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A. PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL, IN PART, PURSUANT TO RULE 12(b)(1) FOR LACK OF STANDING.

Plaintiffs bear the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*United States v. Hays*, 515 U.S. 737, 742-743 (1995) (quoting *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)).  A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).   "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 519 (1975)).

Courts "should not speculate concerning the existence of standing. . . . If the plaintiff fails to meet its burden, th[e] court lacks the power to create jurisdiction by embellishing a deficient allegation of injury."   *Dimaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006)).   In the context of a racial gerrymander claim, a plaintiff first must show that "he or she, *personally*, has been injured by [a] racial classification" that dilutes his or her vote. *Hays*, 515 U.S. at 744  (emphasis added). A plaintiff who does not live in the challenged district has

6

not suffered the necessary personal injury. *Id*. at 744-45 ("Where a plaintiff resides in a racially gerrymandered district, . . . the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action."); *see also Sinkfield v. Kelley*, 531 U.S. 28, 30 (2000). Similarly, in the context of a Sec. 2 claim, a plaintiff must allege sufficient facts to show that they have been personally injured by the challenged legislation. The Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *Hays*, 515 U.S. at 743. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. Here, not all of the Plaintiffs are affected in a personal way.

       1.    **Plaintiffs McKenzie, Orange, Snow, Arrey-Mbi, Anderson and Jackson Lack Standing to Challenge any aspect of H.B. 566.**

Plaintiffs, McKenzie, Orange, Snow, Arrey-Mbi, Anderson, and Jackson, reside in a district that was *not* part of the 2015 redistricting changes included in H.B. 566. Plaintiff McKenzie states that she resides in HD 88; Plaintiff Orange states that she resides in HD 57; Plaintiff Andrea Snow states that she resides in HD 92; Plaintiff Sammy Arrey-Mbi states that he resides in HD 75; Plaintiff Lynne

Anderson states that she resides in HD 90; Plaintiff Coretta Jackson states that she resides in HD 61, none of these districts are included in H.B. 566.  Comp. ¶¶ 25-30.  *See* Exhibit A.  Therefore, H.B. 566 did them no cognizable harm. In the absence of factual allegations demonstrating that these Plaintiffs suffered an injury caused by H.B. 566, Plaintiffs McKenzie, Orange, Snow, Arrey-Mbi, Anderson and Jackson lack standing to proceed with their claims and they should be dismissed.  *Spokeo*, 136 S. Ct at 1547.

### 2.  Plaintiff Cunningham Lacks Standing to Bring the First and Third Claims.

Plaintiff Audra Cunningham states that she is a resident of HD 59, in Fulton County.  Comp. ¶ 24.  This HD was part of the 2015 legislation that Plaintiffs challenge.  However, Plaintiffs' first and third causes of action are directed to House Districts 105 and 111, and Plaintiff Cunningham does not reside in either of those districts.  Therefore, Plaintiff Cunningham does not have standing to bring Counts I and III of Plaintiffs' Amended Complaint.  *Hays*, 515 U.S. at 744-745.[1]

---

[1] Of course, Plaintiffs McKenzie, Orange, Snow, Arrey-Mbi, Anderson, and Jackson are similarly without standing to challenge any claims related to HDs 105 and 111.

8

## B.   PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL, IN PART, UNDER RULE 12(b)(6).

When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true, and must construe those allegations in the light most favorable to the plaintiff. *Riven v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (courts are to "eliminate any allegations in the complaint that are merely legal conclusions").

Additionally, "unwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations." *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted). A court is to make reasonable inferences in the plaintiff's favor, but it is not required to draw plaintiff's inferences.  *Id.; see also Amer. Dental Assoc.*, 605 F.3d at 1290 ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"), *quoting Iqbal*, 556 U.S. at 682.   "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at

1260.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief."  556 U.S. at 679.     Here, Plaintiffs' allegations fail to show that Plaintiffs are entitled to relief as to Counts I and II of the complaint.

### 1.     COUNT I FAILS TO STATE A CLAIM AS TO WHICH RELIEF MAY BE GRANTED.

In Count I of their Complaint, Plaintiffs argue that H.B. 566 is the product of intentional discrimination, in violation of Sec. 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments.  Plaintiffs' allegation of discriminatory intent is directed to the changes made to HD 105 and HD 111, but the allegations of discriminatory intent are not tethered to a particular discriminatory result, something that this Court has already deemed necessary.

In their Complaint, Plaintiffs allege:

The Republican controlled General Assembly enacted H.B. 566 with the intent to discriminate against African-American voters in House Districts 105 and 111 by diluting their voting strength. The General Assembly's purposeful action had the effect of denying African-American voters the opportunity to elect their candidates of choice, in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth

Amendments to the United States Constitution.

Compl. ¶ 124. As noted above, only Plaintiffs Thompson, Swanson, and Payton can claim to have been injured by H.B. 566, as they are the only residents of HD's 105 and 111.

In *NAACP v. Kemp*, now consolidated with this case, this Court concluded that Section 2 is not violated by allegations of discriminatory intent without corresponding factual allegations setting forth all three preconditions in *Thornburg v. Gingles*, 478 U.S. 30 (1986).[2]  *NAACP*, Doc. 28 at 21-22 (citing *Johnson v. DeSoto Cty. Bd. of Comm'rs*, 72 F. 3d 1556, 1563 (11th Cir. 1996)).  This Court

---

[2] The Supreme Court has repeatedly reaffirmed the *Gingles* three prong test as necessary preconditions to bringing an action.

> First, a "minority group" must be "sufficiently large and geographically compact to constitute a majority" in some reasonably configured legislative district. [*Gingles*, 478 U.S.] at 50, 106 S. Ct. 2752, 92 L. Ed. 2d 25. Second, the minority group must be "politically cohesive." *Id.*, at 51, 106 S. Ct. 2752, 92 L. Ed. 2d 25. And third, a district's white majority must "vote[ ] sufficiently as a bloc" to usually "defeat the minority's preferred candidate." *Ibid.* Those three showings, we have explained, are needed to establish that "the minority [group] has the potential to elect a representative of its own choice" in a possible district, but that racially polarized voting prevents it from doing so in the district as actually drawn because it is "submerg[ed] in a larger white voting population." *Growe v. Emison*, 507 U. S. 25, 40, 113 S. Ct. 1075, 122 L. Ed. 2d 388 (1993).

*Cooper v. Harris*, __ U.S. __, 197 L. Ed. 2d 837, 854 (May 22, 2017).

held that "[b]ecause the first two Gingles preconditions were not properly alleged by the plaintiffs," their claim should be dismissed without prejudice. *Id*. at 22-25.

Like the Plaintiffs in *NAACP*, here, the *Thompson* Plaintiffs allege discriminatory intent but do not allege that African-Americans are sufficiently numerous and geographically compact to constitute a majority in either HD 105 or HD 111.[3] Plaintiffs' allegations that African-American voters can constitute a majority in one additional single-member district *somewhere* within a ten (10) county area, including five (5) counties that were not part of H.B. 566, are insufficient to tether Plaintiffs' intentional discrimination claim regarding HD 105 and HD 111 to a discriminatory effect sufficient to state a claim. This is particularly true in light of Plaintiffs' allegations describing the changes made to these two districts as decreasing the African-American voting age population from 32.4% to 30.4% (HD 105) and from 33.2 to 31% (HD 111). Compl. ¶¶ 74, 78, 88, 92. Neither of these districts was a majority African-American district prior to H.B. 566's enactment and Plaintiffs have not alleged that either could be a majority African-American district. Plaintiffs' additional conclusory allegations, that the failure to include one additional majority African-American district dilutes the

---

[3] The NAACP Plaintiffs did assert that they could, together with other minority voters, constitute a majority coalition minority in HD 105. Plaintiffs here make no similar allegations.

voting strength of African-American voters, is not entitled to any weight. *Iqbal*, 556 U.S. at 678. Plaintiffs' factual allegations are insufficient to support a claim for violation of Sec. 2 in Count I of their Amended Complaint.

### 2. COUNT II FAILS TO STATE A CLAIM AS TO WHICH RELIEF MAY BE GRANTED.

Plaintiffs' second claim, for vote dilution under Sec. 2 of the Voting Rights Act, fails to sufficiently allege a claim. Plaintiffs' vote dilution claim is premised entirely on the legislature's failure to create one additional majority African-American district in H.B. 566. Compl. ¶¶ 130-136. Plaintiffs identify a ten (10) county area in which they allege that an additional majority African-American district, including at least some African-American voters from Henry County, could be created. Compl. ¶¶ 108, 114. First, as discussed above, H.B. 566 only redistricted certain House Districts, and five (5) of the ten (10) counties in Plaintiffs' defined "metro Atlanta area" were not part of any changes imposed by H.B. 566. Exhibit A. Second, Plaintiffs fail to allege facts showing that the voting strength of African-American voters in this ten (10) county area is actually diluted.

Plaintiffs allege that one additional majority African-American district could have been drawn in the metro Atlanta area. However, H.B. 566 did not make changes to half of the ten (10) county area described by Plaintiffs, and Plaintiffs make no allegation that an additional majority African-American majority district

could be included just within the area that H.B. 566 actually affected.  *Compare*

Exhibit A and Compl. ¶ 108.  Therefore, Plaintiffs have not sufficiently alleged

how H.B. 566 caused them any injury.  Plaintiffs' allegations that the district lines

pack or crack African-American communities, without more, are also insufficient

to allege an injury.  As the Supreme Court has explained:

> some dividing by district lines and combining within them is virtually
> inevitable and befalls any population group of substantial size.
> Attaching the labels 'packing' and 'fragmenting' to these
> phenomena, without more, does not make the result vote dilution
> when the minority group enjoys substantial proportionality.

*Johnson v. DeGrandy*, 512 U.S. 997, 1015-1016 (1994).  Here, Plaintiffs' only

specific allegations are that the African-American voting age population in HD 105

and HD 111 decreased from 32.4% to 30.4% and from 33.2 to 31% respectively.

Compl. ¶¶ 74, 78, 88, 92.  These allegations are insufficient to establish the first

*Gingles*  prong because Plaintiffs have failed to allege that a majority African-

American district can be created within the area actually affected by H.B. 566.  *See*

*Hays*, 515 U.S. at 743 ("there must be a causal connection between the injury and

the conduct complained of.").  Moreover, as shown below, African-American

voters in the ten (10) county area described by Plaintiffs have the opportunity to

elect candidates in roughly the same proportion as their numbers in the population.

Even if this Court finds that Plaintiffs have sufficiently alleged the first *Gingles* precondition, where, as here, Plaintiffs' challenge is to the failure to create additional majority African-American districts, Plaintiffs must allege facts beyond simply the three *Gingles* preconditions to support a finding that without the additional district the votes of African-American voters are diluted. Plaintiffs' claim requires:

> a court to determine whether provision for somewhat fewer majority-minority districts than the number sought by the plaintiffs [is] dilution of the minority votes. The District Court [is] accordingly required to assess the probative significance of the *Gingles* factors critically after considering the further circumstances with arguable bearing on the issue of equal political opportunity.

*DeGrandy*, 512 U.S. at 1013. Here, Plaintiffs allege that this ten (10) county area has a total voting age population of 3,029,632 which is 36.4% African-American. Compl. ¶ 112. This Court can take judicial notice of U.S. Census information for the ten (10) county area described by Plaintiffs.[4] The total population of this ten

---

[4] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See also*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citing 5B Wright & Miller §1357 (3d ed. 2004 and Supp. 2007)).

(10) county area is 4,107,750, roughly the size of 76 House Districts.[5]  Plaintiffs allege that there are thirty-one (31) districts in this ten (10) county area that have a majority African-American voting age population.  Compl. ¶ 67.  In other words, African-American voters in this ten (10) county area are roughly proportionally represented with 31 of 76 house districts (40%).  Like *DeGrandy*, here, even if the Court accepts Plaintiffs' allegation that an additional majority African-American district can be created *somewhere* in this ten (10) county area as sufficient to establish the first *Gingles* prong, the legal issue for the Court to decide is:

> whether, even with all three *Gingles* conditions satisfied, the circumstances in totality support a finding of vote dilution when [African-Americans] can be expected to elect their chosen representatives in substantial proportion to their percentage of the area's population.

*DeGrandy*, 512 U.S. at 1007-1008.  Plaintiffs have failed to sufficiently allege facts from which this Court could conclude that despite roughly proportional representation, the voting strength of African-American voters in this ten (10) county area is diluted by H.B. 566.[6]  In *DeGrandy*, the Supreme Court held that the

---

[5] The "ideal" district size (total population of Georgia divided by 180 total seats) for the Georgia House of Representatives is 53,820.  *See* http://www.legis.ga.gov/Joint/reapportionment/Documents/2015/House15-PACKET.pdf.

[6] Like *DeGrandy*, where Plaintiffs' allegations that additional majority African-American districts may be created are focused on a particular geographical scope,

districting plan in question did not deny minority voters equal opportunity to elect, despite the presence of all three *Gingles* preconditions and a history of "persistent discrimination reflected in the larger society." 512 U.S. at 1013. The legal test is "whether the totality of facts, including those pointing to proportionality, show[ ] that the new scheme would deny minority voters equal political opportunity." 512 U.S. at 1013-1014. Here, Plaintiffs have failed to sufficiently allege facts from which this Court could find that, despite proportionality, H.B. 566 denies African-American voters, in the ten (10) county area described by Plaintiffs, an equal opportunity to elect candidates of choice.

This 13th day of November, 2017.

Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General 112505

ANNETTE M. COWART 191199
Deputy Attorney General

RUSSELL D. WILLARD 760280
Senior Assistant Attorney General

/s/Cristina Correia
CRISTINA CORREIA 188620
Assistant Attorney General
40 Capitol Square SW

---

here, the measure for proportionality is similarly tied to the geography of the ten (10) county metro Atlanta area. 512 U.S. at 1022.

Atlanta, GA 30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325

/s/ Frank B. Strickland
Frank B. Strickland
Special Assistant Attorney General
Georgia Bar No. 687600
fbs@sbllaw.net
John J. Park, Jr.
Georgia Bar No. 547812
jjp@sbllaw.net
Barclay S. Hendrix
Georgia Bar No. 917852
Barclay.hendrix@sbllaw.com
STRICKLAND BROCKINGTON
LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, Georgia 30309
678-347-2200 (telephone)
678-347-2210 (facsimile)


Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the

undersigned hereby certifies that the

foregoing Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General 112505

ANNETTE M. COWART 191199
Deputy Attorney General

RUSSELL D. WILLARD 760280
Senior Assistant Attorney General

/s/Cristina Correia
CRISTINA CORREIA 188620
Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
ccorreia@law.ga.gov
404-656-7063
404-651-9325

/s/ Frank B. Strickland
Frank B. Strickland
Special Assistant Attorney General
Georgia Bar No. 687600
fbs@sbllaw.net
John J. Park, Jr.
Georgia Bar No. 547812
jjp@sbllaw.net
Barclay S. Hendrix
Georgia Bar No. 917852
Barclay.hendrix@sbllaw.com
STRICKLAND BROCKINGTON

LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, Georgia 30309
678-347-2200 (telephone)
678-347-2210 (facsimile)

Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing

Notice of Appearance of Counsel has been prepared in Times New Roman 14, a

font and type selection approved by the Court in L.R. 5.1(B).

<u>/s/Cristina Correia</u>
CRISTINA CORREIA 188620
Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I have electronically filed the foregoing

**DEFENDANT'S BRIEF IN SUPPORT OF PARTIAL MOTION TO**

**DISMISS** with the Clerk of Court using the CM/ECF system, which will

automatically send email notification of such filing to all attorneys of record.

This 13th day of November, 2017.

/s/ Cristina Correia
Assistant Attorney General

has been prepared in Times New Roman 14, a font and type selection approved by

the Court in L.R. 5.1(B).

/s/Cristina Correia
CRISTINA CORREIA 188620
Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I have electronically filed the foregoing

**DEFENDANT'S BRIEF IN SUPPORT OF PARTIAL MOTION TO**

**DISMISS** with the Clerk of Court using the CM/ECF system, which will

automatically send email notification of such filing to all attorneys of record.

This 13th day of November, 2017.

/s/ Cristina Correia
Assistant Attorney General