## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AUSTIN THOMPSON, an individual; WAYNE SWANSON, an individual; DARRYL PAYTON, an individual; AUDRA CUNNINGHAM, an individual; SABRINA MCKENZIE, an individual; JAMIDA ORANGE, an individual, ANDREA SNOW, an individual; SAMMY ARREY-MBI; LYNNE ANDERSON, an individual; and CORETTA JACKSON, an individual, | Case No. 1:17-cv-01427-TCB-WSD-BBM |
| Plaintiffs, | |
| v. | |
| BRIAN KEMP, in his official capacity as Secretary of State of the State of Georgia, | |
| Defendant. | |

## PLAINTIFFS' INITIAL DISCLOSURES

Plaintiffs submit their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)

and Local Rule 26, as follows:

*(1) State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.*

**(a)     The Cause of Action:**

1

This is an action to enjoin the Secretary of State from enforcing Act No. 1EX, as amended by Act. No. 277 ("H.B. 829") and Act. No. 251 (2015 Ga. Laws 1413) ("H.B. 566"). Plaintiffs allege that: (1) the current Georgia House of Representatives redistricting plan, as amended by H.B. 566, violates the "results" prong of Section 2 of the Voting Rights Act; (2) H.B. 566 was enacted with a discriminatory purpose in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution; and (3) the General Assembly drew House Districts 105 and 111 as racial gerrymanders in H.B. 566 in violation of the Fourteenth Amendment.

      **(b)**     **Brief Factual Outline:**

The Georgia House of Representatives is composed of 180 members, each of whom are elected from single-member districts. In 2011, following the 2010 Census, the General Assembly enacted a redistricting map (Act No. 1 EX), which packed Georgia's African-American voters into as few House districts as possible. In many majority African-American districts, the result was a Black Voting Age Population ("BVAP") of nearly 70%. By packing African-American voters into majority-minority districts and cracking the populations of African-American voters not placed in majority African-American districts, the General Assembly failed to account for the fact that the growing African-American population in the

Atlanta metropolitan area made it possible to draw *at least* one additional majority African-American House district that would have the ability to elect the African-American voters' candidate of choice. By failing to draw at least one additional majority African-American district in the current House map, the current map for the Georgia House of Representatives violates the "results" prong of Section 2.

Moreover, in the years since the 2011 Georgia House of Representatives map was enacted, changing demographics made some of the General Assembly's carefully drawn Republican seats, which were held by White incumbents, increasingly vulnerable. This phenomenon was most obvious in the Atlanta metropolitan area, and particularly with respect to House Districts 105 and 111, where the incumbent White Republicans barely fought off challenges in 2012 and 2014 by African-American Democrats. In response, following the 2014 election, the General Assembly passed mid-cycle redistricting legislation (H.B. 566) that, among other things, altered the lines House Districts 105 and 111. H.B. 566 was enacted with the purpose and had the effect of diluting African-American voting strength in House Districts 105 and 111 by removing African-American voters from those districts and replacing them with White voters.

Under H.B. 566, House Districts 105 and 111 are racial gerrymanders because the General Assembly re-drew those districts by moving substantial

numbers of Georgia voters in and out of the districts predominantly based on race without a compelling basis. In the 2016 election, the race-based exchange of voters that occurred under H.B. 566 had its intended effect: the White, Republican incumbents in House Districts 105 and 111 were protected, and their African-American, Democratic challengers were narrowly defeated.

In 2017, the General Assembly proposed a second mid-cycle redistricting bill, H.B. 515, which would have similarly replaced African-American voters in districts represented by White Republicans with White voters, with the clear goal of making it more difficult for African-American voters to elect their candidates of choice. H.B. 515 was eventually tabled in the Senate.

Plaintiffs' action was filed following the 2016 election and on the heels of the General Assembly's failed attempt to engage in mid-cycle redistricting for a second time in 2017. Plaintiffs contend that Georgia's current House plan, as amended by H.B. 566, violates the "results" prong of Section 2 of the Voting Rights Act, and that H.B. 566 violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.

### (c)    Statement of Legal Issues:

The relevant legal issues include:

(1) Whether the redistricting of House Districts 105 and 111 in H.B. 566 was done with a discriminatory purpose in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution;

(2) Whether the failure to create at least one additional majority-minority House District in the current redistricting plan, as amended by H.B. 566, violates the "results" prong of Section 2 of the Voting Rights Act; and

(3) Whether the redistricting of House Districts 105 and 111 in H.B. 566 constitutes unconstitutional racial gerrymandering because the districts were drawn with race as the predominant factor without a compelling state interest.

*(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.*

Plaintiffs allege claims under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.

Plaintiffs allege in Count I of the Amended Complaint that H.B. 566 was enacted for a racially discriminatory purpose in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution. Section 2 of the Voting Rights Act of 1965 prohibits the enforcement of any voting qualification or prerequisite to voting or any standard, practice, or procedure that has the effect of denying or abridging the right to vote on account of race, color, or

membership in a language minority group. 52 U.S.C. § 10301(a). When it amended

Section 2 of the Voting Rights Act, Congress made clear that under Section 2,

"Plaintiffs must either prove such [discriminatory] intent, or, alternatively, must

show that the challenged system or practice, in the context of all the circumstances

in the jurisdiction in question, results in minorities being denied equal access to the

political process." S.Rep. No. 97-417, 97th Cong., 2d Sess. (1982), at 27. Section 1

of the Fourteenth Amendment to the United States Constitution provides in

relevant part: "No State shall make or enforce any law which shall abridge the

privileges or immunities of citizens of the United States; nor shall any State

deprive any person of life, liberty, or property, without due process of law; nor

deny to any person within its jurisdiction the equal protection of the laws." The

Fifteenth Amendment to the United States Constitution prohibits the denial or

abridgement of the right to vote on account of race, color, or previous condition of

servitude. Legislation intended, at least in part, to discriminate on the basis of race

in the voting context violates the Fourteenth and Fifteenth Amendments. *See*, *e.g.*,

*City of Mobile v. Bolden*, 446 U.S. 55, 62, 66 (1980) (plurality opinion); *Vill. of*

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

This court has stated that Eleventh Circuit precedent, *Johnson v. DeSoto Cty.*

*Bd. of Comm'rs*, 72 F.3d 1556 (11th Cir. 1996) ("*DeSoto*"), requires a showing of

discriminatory results for Section 2 intent claims. Other circuits that have

considered intent claims under Section 2, however, have declined to adopt a

*Gingles* requirement to show discriminatory results, relying instead on numerous

factors to decide if a practice produces discriminatory effects. *See e.g., United*

*States v. Brown*, 561 F.3d 420, 433 (5th Cir. 2009) (describing the types of

circumstantial evidence that is probative of discriminatory intent, including "the

impact of an action bear[ing] more heavily on one race than another, the historical

background of the decision, the specific sequence of events leading up to the

challenged decision, [d]epartures from the normal procedural sequence, and

statements by members of the decisionmaking body") (citations and internal

quotation marks omitted).

Plaintiffs allege in Count II of the Amended Complaint that the General

Assembly failed to draw at least one additional majority African-American district

in the current redistricting plan, as amended by H.B. 566, in violation of the

"results" prong of Section 2 of the Voting Rights Act. Section 2 of the Voting

Rights Act prohibits the enforcement of any voting qualification or prerequisite to

voting or any standard, practice, or procedure that results in the denial or

abridgement of the right of any U.S. citizen to vote on account of race, color, or

membership in a language minority group. 52 U.S.C. § 10301(a). The Supreme

Court has explained that the "essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). *Gingles* sets forth three necessary preconditions for alleging a Section 2 "results" claim: first, the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district; second, the minority group must be politically cohesive; and third, the plaintiffs must demonstrate that the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. *Id.* at 50-51. When it amended the Voting Rights Act, Congress established a non-exclusive list of factors called the "Senate Factors" that a court may consider in determining whether a plaintiff has met the burden of establishing discriminatory results under Section 2. *See* S.Rep. No. 97-417, 97th Cong., 2d Sess. (1982), at 28-29; *see also Gingles*, 478 U.S. at 36 (noting that Senate Factors "elaborate[] on the circumstances that might be probative of a § 2 violation").

Finally, in Count III, Plaintiffs allege that House Districts 105 and 111 were drawn as illegal racial gerrymanders in H.B. 566, in violation of the Fourteenth Amendment. Plaintiffs bringing a racial gerrymandering claim under the Equal

Protection Clause must show that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Miller v. Johnson*, 515 U.S. 900, 916 (1995). The burden then shifts to defendants to satisfy strict scrutiny by demonstrating that the race-based districting was narrowly tailored to a compelling government interest. *Id*. at 920. To meet their burden, plaintiffs must show that the legislature "subordinated traditional race-neutral districting principles . . . to racial considerations" in drawing districts. *Id.* at 916. The legislature does this when it "'place[s]' race 'above traditional districting considerations in determining which persons were placed in appropriately apportioned districts.'" *Ala. Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1271(2015) (emphasis and citation omitted). Plaintiffs may prove racial gerrymandering by showing "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose" that race was the legislature's predominant purpose in drawing the district. *Bethune-Hill v. Virginia State Bd. of Elections*, 137 S. Ct. 788, 792 (2017); *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017).

Plaintiffs note that the case law cited above is illustrative and not intended to be exhaustive. Plaintiffs anticipate they may rely upon additional legal authorities as this litigation progresses.

*(3) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)*

    *See* Attachment A.

*(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)*

The Plaintiffs have not yet identified expert witnesses under Fed. R. Civ. P. 26(a)(2). Plaintiffs will amend this response at the appropriate time and in compliance with the Federal Rules of Civil Procedure or other Orders of the Court.

*(5) Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.) See Attachment C.*

    *See* Attachment C.

*(6) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including*

*materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)*

Plaintiffs are not seeking money damages. Plaintiffs seek declaratory relief, injunctive relief, and any other relief the Court deems proper, including attorneys' fees and reasonable costs, in an amount to be determined at the conclusion of this litigation.

*(7) Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)*

Plaintiffs are unaware of any insurance policy under which an insurance business may be liable to satisfy all or part of a possible judgment that may be entered in the action.

*(8) Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs cause of action and state the basis and extent of such interest.*

This is not applicable to Plaintiffs.

Dated:  December 13, 2017        Respectfully submitted,

By /s/ *Aria Branch*_____
Marc Erik Elias (*admitted pro hac vice*)
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: MElias@perkinscoie.com
Email: ABranch@perkinscoie.com

Abha Khanna (*admitted pro hac vice*)
**Perkins Coie, LLP**
1201 Third Avenue, Ste. 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
Email: AKhanna@perkinscoie.com

Quinton Washington (GA Bar No. 159067)
**Bell & Washington LLP**
196 Peachtree Street SW, Suite 310
Atlanta, GA 30303
Phone: (404) 437-6641
Email: Quinton@bellwashington.com

*Attorneys for Plaintiffs*

## Attachment A

1.      It is expected that the **Plaintiffs** listed below may have discoverable

information about the allegations and claims set forth in the Complaint, including

but not limited to information about Georgia's history of discrimination and the

ways in which House Districts 105 and 111 and surrounding districts changed as a

result of H.B. 566. All Plaintiffs should be contacted only through undersigned

counsel. The Plaintiffs in this action include:

| NAME | CONTACT INFORMATION |
| --- | --- |
| **Austin Thompson** | *Contact Through Undersigned Counsel* |
| **Wayne Swanson** | *Contact Through Undersigned Counsel* |
| **Darryl Payton** | *Contact Through Undersigned Counsel* |
| **Audra Cunningham** | *Contact Through Undersigned Counsel* |
| **Sabrina McKenzie** | *Contact Through Undersigned Counsel* |
| **Jamida Orange** | *Contact Through Undersigned Counsel* |
| **Andrea Snow** | *Contact Through Undersigned Counsel* |
| **Sammy Arrey-Mbi** | *Contact Through Undersigned Counsel* |
| **Lynne Anderson** | *Contact Through Undersigned Counsel* |
| **Coretta Jackson** | *Contact Through Undersigned Counsel* |

2.      Plaintiffs anticipate that **current and former members of the**

**Georgia General Assembly who have been involved in redistricting legislation**

**since 2000** will have discoverable information about the allegations and claims set

forth in the Complaint, including but not limited to information about the racially discriminatory purpose and/or effect of the Georgia House Plan; the General Assembly's legislative process with respect to redistricting legislation, including H.B. 566; the history of official voting-related discrimination in Georgia; the use of overt or subtle racial appeals in political campaigns; and the racial gerrymandering of House Districts 105 and 111.

3.      Plaintiffs anticipate that **individuals who have run for office as candidates in House Districts 105 and 111** will have discoverable information about the allegations and claims set forth in the Complaint, including but not limited to information concerning the racially discriminatory purpose and/or effect of the Georgia House Plan; the use of overt or subtle racial appeals in political campaigns; and the racial gerrymandering of House Districts 105 and 111. One of the plaintiffs in this action, Darryl Payton, is among the individuals who have run for office in House District 111. Mr. Payton was defeated by a White opponent in the 2016 general election for House District 111. As stated above, Mr. Payton should only be contacted through undersigned counsel.

4.      Plaintiffs anticipate that present and former staff, employees, or agents of **Georgia's Secretary of State's Office**, including **Defendant Brian**

**Kemp**, the Secretary of State of Georgia, may have discoverable information related to the allegations and claims as set forth in the Complaint.

5.     Plaintiffs anticipate that present and former staff, employees, or agents of the **Georgia Legislative and Congressional Reapportionment Office** may have discoverable information about the redistricting process, criteria used in the drawing of the districts, consideration of alternative plans, persons and parties having input in the process, and the intent, motives and reasons behind the Georgia House Plan.

Plaintiffs note that many other individuals may have information that is relevant to this case. Plaintiffs expect the identities of these individuals to come to light during the discovery period in this case. Plaintiffs reserve the right to alter, add to, or amend this list of individuals as discovery progresses, either by amendment to these Disclosures or through the identification of said individuals in depositions or responses to written discovery requests.

**Attachment C**

Plaintiffs have in their possession, custody, or control the following documents, electronically stored information and tangible things that they may use to support their claims:

- Population and geographic data from the United States Census for counties in the Atlanta metropolitan area (public domain);

- American Community Survey ("ACS") data conducted by the Census Bureau for counties in the Atlanta metropolitan area (public domain);

- Internet websites created or maintained by the Georgia legislature and the Georgia Legislative and Congressional Redistricting Office, their members, and staff (public domain);

- Internet website created or maintained by the Georgia Secretary of State's Office (public domain);

- Statements made to the press by Georgia legislators in connection with redistricting (public domain);

- Internet website for the Atlanta Regional Commission (public domain);

- Books, articles, and other documents describing or analyzing the history of discrimination in Georgia (public domain); and

- Documents produced by Defendant on November 13, 2017 in connection with this lawsuit.

Plaintiffs note that many other documents are relevant to and discoverable in this case. Plaintiffs expect these additional documents to come to light during the discovery period of this litigation, and Plaintiffs reserve the right to alter, add to, or amend this list of documents as discovery progresses, either by amendment to these Disclosures or through the identification of said documents in depositions or discovery responses.

Dated:  December 13, 2017          Respectfully submitted,

By /s/ *Aria Branch*_____
Marc Erik Elias (*admitted pro hac vice*)
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: MElias@perkinscoie.com
Email: ABranch@perkinscoie.com

Abha Khanna (*admitted pro hac vice*)
**Perkins Coie, LLP**
1201 Third Avenue, Ste. 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000
Email: AKhanna@perkinscoie.com

Quinton Washington (GA Bar No. 159067)
**Bell & Washington LLP**
196 Peachtree Street SW, Suite 310
Atlanta, GA 30303
Phone: (404) 437-6641
Email: Quinton@bellwashington.com

*Attorneys for Plaintiffs*

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I certify that this pleading has been prepared with Times New Roman 14

point, as approved by the Court in L.R. 5.1(C), N.D. Ga.

Respectfully submitted, this 13th day of December, 2017.

By /s/ *Aria Branch*
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: ABranch@perkinscoie.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of December, 2017, I filed the foregoing

**PLAINTIFFS' INITIAL DISCLOSURES** with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to all counsel of

record.

By /s/ *Aria Branch*
Aria C. Branch (*admitted pro hac vice*)
**Perkins Coie, LLP**
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
Email: ABranch@perkinscoie.com

*Counsel for Plaintiffs*