IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA  ATLANTA DIVISION

| | |
|---|---|
| AUSTIN THOMPSON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Secretary of State of the State of Georgia,<br><br>    Defendant. | Civil Action No. 1:17-cv-01427-TCB-WSD-BBM |

# OPINION AND ORDER

Before MARTIN, Circuit Judge, and DUFFEY and BATTEN, District Judges.

MARTIN, Circuit Judge:

Nine Georgia voters ("plaintiffs") bring this action challenging Georgia's 2015 redistricting plan as violating the Constitution as well as Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  First Am. Compl. ("Compl."), Doc. 84 ¶¶ 1, 21–30.  The plaintiffs[1] challenge the current Georgia voting maps, as amended by Georgia Act No. 251, 2015 Ga. Laws 1413 ("H.B. 566"), which they say "quashed the growing minority population's voting strength in two specific House

---

[1] The plaintiffs are Austin Thompson, Darryl Payton, Audra Cunningham, Sabrina McKenzie, Jamida Orange, Andrea Snow, Sammy Arrey-Mbi, Lynne Anderson, and Coretta Jackson.  Compl. ¶¶ 21–30.

districts" and "circumvented the creation of at least one additional majority-minority district." Id. ¶ 1.  The plaintiffs have sued Georgia Secretary of State Brian Kemp in his official capacity, seeking various forms of declaratory and injunctive relief.  Id. ¶ 31.

The plaintiffs' First Amended Complaint sets forth three counts.  Count One alleges that H.B. 566 was enacted with a discriminatory purpose, or an intent to dilute the vote, in violation of the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act.  Id. ¶¶ 119–28.  This count addresses the modifications made by H.B. 566 to House Districts 105 and 111.  Id. ¶ 124.  Count Two alleges that H.B. 566 violates the results prong of Section 2 of the Voting Rights Act.  Id. ¶¶ 129–36.  In this count, the plaintiffs assert that Section 2 requires the creation of at least one additional majority-minority district in the metropolitan Atlanta area.  Id. ¶ 132.  Count Three is a racial gerrymandering claim, alleging a violation of the Fourteenth Amendment.  Id. ¶¶ 137–43.  In this count, the plaintiffs assert that race was the predominant factor in H.B. 566's redrawing of House Districts 105 and 111.  Id. ¶ 139.

Secretary Kemp has moved to dismiss the plaintiffs' complaint in part under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 47-1 at 5, 9.  First, Secretary Kemp seeks to dismiss plaintiffs Ms. McKenzie, Ms. Orange, Ms. Snow, Mr. Arrey-Mbi, Ms. Anderson, and Ms. Jackson as lacking standing to challenge

H.B. 566, and Ms. Cunningham as lacking standing to bring Counts One and Three.  Id. at 7–8.  Second, he seeks to dismiss Counts One and Two for failure to state a claim.  Id. at 10–13.

After careful review, we hold that the plaintiffs have alleged sufficient facts to establish standing.  For the reasons that follow, we grant the defendant's motion to dismiss with respect to Count One, but deny his motion with respect to Count Two.

## I.  THE FACTS

Many of the facts describing the history of voting discrimination in Georgia were set out in our earlier order granting Secretary Kemp's partial motion to dismiss in this now consolidated case.  Doc. 28 at 3–10.  For this order, we recite only those facts related to the passage of Georgia's current House of Representatives voting map and its effects.  We take the facts alleged in the plaintiffs' complaint as true, and construe them in the light most favorable to the plaintiffs.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).  This account is therefore derived from the plaintiffs' complaint.

The Georgia constitution provides that the apportionment of the Georgia House of Representatives "shall be changed by the General Assembly as necessary after each United States decennial census."  Ga. Const. Art. III, § 2, ¶ 2.  To comply with this provision, the Georgia General Assembly redrew the state House

of Representative districts after the 2010 census. Compl. ¶ 57. This new voting map, provided in Act No. 1EX, went into effect in late 2011. Id. ¶ 58. The General Assembly then amended Act No. 1EX to adjust the lines of fifteen House districts. Id. ¶ 59. The new map, as modified by Act No. 277, went into effect in 2012, and it was this map upon which the 2012 and 2014 Georgia House elections were conducted. Id. ¶¶ 61–62, 65.

Then, in 2015, the Georgia General Assembly enacted H.B. 566, which modified the lines of seventeen Georgia House districts, including Districts 105 and 111. Id. ¶¶ 1, 66, 69. H.B. 566 changed the map for Georgia House Districts from that used in the 2012 and 2014 elections even though no new census had been taken. Id. ¶ 65. Another plan to modify the Georgia House districts map was proposed in the General Assembly in 2017 but failed to pass. Id. ¶ 70. As a result, H.B. 566, when read together with Act No. 277 and Act No. 1EX, establishes the current Georgia House of Representatives voting map.

Two of the plaintiffs' counts address H.B. 566's adjustment of the boundaries of House Districts 105 and 111. In both districts, the minority voting age population had significantly increased. Id. ¶ 71. And in both districts, Democratic candidates narrowly lost Georgia House elections to white Republican candidates in 2012 and 2014. Id. ¶¶ 76–77, 90–91. The 2015 amendments to the borders of Districts 105 and 111 decreased the African-American population and

increased the white population in both districts.  Id. ¶¶ 78, 92.  The plaintiffs allege that voters were moved in and out of Districts 105 and 111 predominantly on the basis of race in an effort to secure seats for White Republican candidates.  Id. ¶¶ 79, 94.  In the 2016 election, Democratic candidates again narrowly lost in Districts 105 and 111.  Id. ¶¶ 81–83, 95.  The plaintiffs allege that if the 2016 elections had taken place using the pre-2015 map, African-American Democratic candidates would have won District 105 and would have likely won District 111.  Id. ¶¶ 84, 96.

In addition, the plaintiffs allege that "the African-American population in certain parts of the state, most notably in the Atlanta metropolitan area, has significantly increased since both the 2000 and 2010 Censuses."  Id. ¶ 14.  This is true especially in the Atlanta exurbs, which include Districts 105 and 111.  Id. ¶¶ 6, 73, 85.  As a result, they say "Section 2 of the Voting Rights Act required the General Assembly to draw at least one additional House district in which minorities have an opportunity to elect their candidates of choice."  Id. ¶ 14.

Each of the plaintiffs in this case are African-American registered voters who live in the Atlanta metropolitan area.  Id. ¶¶ 21–30.  Mr. Thompson lives in District 105.  Id. ¶ 21.  Mr. Payton lives in District 111.  Id. ¶¶ 23.  Ms. Cunningham (District 59), Ms. Orange (District 57), and Ms. Anderson (District 90) live "in the Atlanta metropolitan area, where an additional majority-minority

5

district could be drawn in order to provide a remedy for the existing Section 2 violation." Id. ¶¶ 24, 26, 29. Ms. McKenzie (District 88), Ms. Snow (District 92), Mr. Arrey-Mbi (District 75), and Ms. Jackson (District 61) live in districts where African-American voters have been "packed," making their votes "of lesser value because minority voters are concentrated there." Id. ¶¶ 25, 27, 28, 30.

The plaintiffs have sued Georgia Secretary of State Brian Kemp, Georgia's chief election officer, in his official capacity. Id. ¶ 31. They seek declaratory and injunctive relief. Id. at 41–42. Among other things, they ask for a declaration that H.B. 566 violates the Constitution and Section 2, and that Districts 105 and 111 are racial gerrymanders. Id. at 41. They seek an order mandating that at least one additional majority-minority House district be created in the Atlanta metropolitan area. Id. They also seek injunctions prohibiting the use of the H.B. 566 districts in future elections and requiring Georgia to get preclearance before implementing any state-level redistricting or electoral changes for at least ten years. Id. at 41–42.

## II. STANDING

Secretary Kemp argues that the plaintiffs' claims should be dismissed in part under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. More to the point, he argues that the plaintiffs who do not live in districts that were modified by H.B. 566 (Ms. McKenzie, Ms. Orange, Ms. Snow, Mr. Arrey-Mbi, Ms. Anderson, and Ms. Jackson) do not have standing to bring any claims. Doc. 47-1

at 7–8. Secretary Kemp also argues that Ms. Cunningham does not have standing to bring Counts One and Three because she does not live in Districts 105 or 111. Id. at 8. He does not challenge Ms. Cunningham's standing to bring Count Two. He also does not challenge the standing of Mr. Thompson or Mr. Payton to bring Counts One, Two, and Three.

The jurisdiction of federal courts is limited to "actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997) (quotation omitted). To have standing to bring a claim, a plaintiff must show (1) an injury in fact that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is likely "that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992) (quotations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016). "For purposes of ruling on a motion to dismiss for want of standing, [we] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975).

The parties agree that only the plaintiffs who reside in Districts 105 and 111

7

have standing to bring Counts One and Three.  Doc. 55 at 3 n.1; Doc. 58 at 2 n.1.  We think they are right, as well, so we turn to the question of which plaintiffs have standing to bring Count Two.  Secretary Kemp argues that the only parties who have standing to bring Count Two are those who live in districts modified in 2015 by H.B. 566.  Doc. 58 at 3–4.  If he is right, Mr. Thompson, Mr. Payton, and Ms. Cunningham have standing to bring Count Two, but Ms. McKenzie, Ms. Orange, Ms. Snow, Mr. Arrey-Mbi, Ms. Anderson, and Ms. Jackson do not.

      The resolution of this dispute depends upon whether the plaintiffs have challenged the current House voting map as a whole (as the plaintiffs argue) or only the modifications made by H.B. 566 (as the defendant argues).  While the complaint can be read to give some support to either argument, we think it most sensible to read Count Two as challenging the current House voting map as a whole.  As we've said, H.B. 566 modified the boundaries of seventeen districts in the map that was first drawn in Act No. 1EX and then modified in Act No. 277.  Compl. ¶¶ 58–59, 66. Evaluation of the current House voting map therefore requires consideration of all three pieces of legislation.  Notably, H.B. 566 itself references the earlier versions of the map it modified.  As the most recent of the three versions, and with that being the case, the only one able to reference the other two, we view the plaintiffs' reference to H.B. 566 in Count Two to be a reference to the current map as a whole rather than just the boundaries modified in 2015.

8

Indeed, that is how the plaintiffs frame Count Two: as a challenge to "[t]he current district boundaries for the House of Representatives." Id. ¶ 131.

We find support for this reading in the way the plaintiffs drafted their complaint. The complaint says H.B. 566 "packs" African-American voters into House Districts 61, 75, 88, and 92. Id. ¶ 109. But those districts were not changed by the H.B. 566 amendments. Doc. 47-1 at 4–5. The complaint also refers to H.B. 566 as "contain[ing] 31 districts in the Atlanta metropolitan area" with a majority African-American voting-age population. Compl. ¶ 67. And in just the preceding paragraph, the complaint recognizes that only seventeen House districts were modified by H.B. 566. Id. ¶ 66. In light of the inconsistencies that would result if we read the plaintiffs' reference to H.B. 566 as only reaching the districts modified in 2015, we decline to do so. We will read the plaintiffs' reference to H.B. 566, at least for purposes of Count Two, as referring to the current state of the Georgia House of Representative map, encompassing H.B. 566, Act No. 277, and Act No. 1EX.

Read this way, we find that all plaintiffs have pled sufficient facts to support their standing to bring Count Two. There is case support for the plaintiffs' standing to bring a Section 2 claim seeking the drawing of additional majority-minority voting districts. For example, in Whitford v. Nichol, 151 F. Supp. 3d 918 (W.D. Wis. 2015), that court found standing to bring this type of Section 2 claim

9

was "limited to plaintiffs who reside in a reasonably compact area that could support additional majority-minority districts." Id. at 926 (quotation omitted and alterations adopted); see also Pope v. Cty. of Albany, No. 1:11-CV-0736, 2014 WL 316703, at *5–6 (N.D.N.Y. Jan. 28, 2014). While these opinions are not binding upon us here, we find their approach sensible at this stage. The plaintiffs have alleged injury in the form of dilution of their voting strength by the current Georgia House District map. Compl. ¶ 131. And they have alleged they live in the Atlanta metropolitan area, where African-American voters are sufficiently numerous and geographically compact to comprise a majority of voters in at least one additional House district. Id. ¶¶ 133–34. A favorable decision requiring the drawing of an additional majority-minority district could redress the injury they allege. At the pleadings stage of the proceedings, this is sufficient to establish standing for all the plaintiffs to bring Count Two.

### III.  PLEADINGS

The defendant moves to dismiss Counts One and Two under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. 47-1 at 9–17. To survive a motion to dismiss, the plaintiffs' allegations must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). In reviewing the plaintiffs' claims, we accept their factual allegations as true and draw all

reasonable inferences in their favor. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).

A. COUNT ONE: DISCRIMINATORY INTENT

In their first count, the plaintiffs allege that H.B. 566 was enacted with the intent to discriminate against African-American voters in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. Compl. ¶¶ 119–28. Secretary Kemp argues that the plaintiffs have failed to state a claim for which relief can be granted because they have not shown all three of the preconditions from Thornburg v. Gingles, 478 U.S. 30, 106 S. Ct. 2752 (1986).[2] Doc. 47-1 at 11–12.

In response, the plaintiffs are correct when they point out that Johnson v. DeSoto County Board of Commissioners, 72 F.3d 1556 (11th Cir. 1996) ("DeSoto I"), did not declare that all three Gingles preconditions must be shown in a Section 2 discriminatory intent claim. In fact, DeSoto I took some care to leave open the possibility that a lesser showing of discriminatory effect might be sufficient in a case that was premised on discriminatory intent. Id. at 1564–65. However, we explained in our earlier order in the consolidated NAACP case that we read

---

[2] The three preconditions named in Gingles are: (1) "a minority group must be sufficiently large and geographically compact to constitute a majority in some reasonably configured legislative district"; (2) "the minority group must be politically cohesive"; and (3) "a district's white majority must vote sufficiently as a bloc to usually defeat the minority's preferred candidate." Cooper v. Harris, 581 U.S. ___, 137 S. Ct. 1455, 1470 (2017) (quotations omitted and alteration adopted).

11

Johnson v. DeSoto County Board of Commissioners, 204 F.3d 1335 (11th Cir. 2000) ("DeSoto II") to require all three Gingles preconditions be shown in order to make a viable discriminatory intent claim. Doc. 28 at 22 (citing DeSoto II, 204 F.3d at 1338). In DeSoto II, the Eleventh Circuit adopted this rule without acknowledging that it was answering the question left open in DeSoto I, or even recognizing the difference between intent and effects claims under Section 2. Nevertheless, the DeSoto II opinion leads with the idea that in order to "satisfy Section 2's standard in a vote dilution case," plaintiffs must show all three: (1) a sufficiently large and geographically compact minority group, such that it could constitute a majority in a district; (2) the minority group is politically cohesive; and (3) the white majority votes as a bloc sufficiently to defeat the minority group's preferred candidates. 204 F.3d at 1338. We conclude that DeSoto II controls here, and the plaintiffs must show all three Gingles preconditions to bring both intent and effects claims under Section 2 of the Voting Rights Act.

Applying this standard, the plaintiffs have not sufficiently alleged the Gingles preconditions. Instead they argue that the Gingles preconditions should not be required. Doc. 55 at 7–12. But as we have explained, we believe the plaintiffs' view conflicts with Eleventh Circuit precedent. As Secretary Kemp correctly points out, the plaintiffs do not allege that minority voters could be a majority in either District 111 or 115. Doc. 47-1 at 12. This means that Count

One does not satisfy the first Gingles precondition. While we acknowledge that the plaintiffs' allegations may be sufficient under effects standards applied in other parts of the country, they are not sufficient under the standard that controls here.

We invited the plaintiffs to file a surreply addressing Secretary Kemp's argument that their constitutional claims should also be dismissed for failure to allege all three Gingles factors. Doc. 82. They declined our invitation. In the order this panel issued in the NAACP case, we quoted DeSoto II as questioning whether "vote dilution can be established under the Constitution when the pertinent record has not proved vote dilution under the more permissive section 2." Doc. 28 at 26 (quoting DeSoto II, 204 F.3d at 1344–45). In DeSoto II, the Eleventh Circuit expressly reserved the question of whether a case that was insufficient under the Voting Rights Act would necessarily be insufficient under the Constitution as well. DeSoto II, 204 F.3d at 1344–45. Rather, the Court held that the plaintiffs' Fourteenth and Fifteenth Amendment claims fell because the plaintiffs were not able to show the first Gingles factor as required to prove causation. Id. at 1346. The plaintiffs have provided us no argument as to why DeSoto II does not require the dismissal of their Voting Rights Act claim, and neither have they provided any alternative standard for viewing the sufficiency of their constitutional claims. Thus in light of DeSoto II, we dismiss Count One in its entirety for failure to state a claim. This dismissal is without prejudice to the plaintiffs' ability to replead this

claim.

B. COUNT TWO: DISCRIMINATORY EFFECTS

In their second count, the plaintiffs allege that H.B. 566 violates the results prong of Section 2 of the Voting Rights Act. Compl. ¶ 130–31. In particular, the plaintiffs claim Section 2 requires the creation of at least one more majority-minority district in the metropolitan Atlanta area. Id. ¶ 132. Secretary Kemp responds with two arguments in his motion to dismiss this count. First, he says plaintiffs have failed to show how H.B. 566 caused them injury insofar as H.B. 566 did not itself modify many of the metropolitan Atlanta districts that are the basis for this claim. Doc. 47-1 at 13. Second, Secretary Kemp argues that plaintiffs have failed to allege sufficient facts to show that the voting strength of African-American voters in metropolitan Atlanta is actually diluted. Id.

We reject the Secretary's first argument for the same reason we rejected his standing argument above. As we've said, we find the most reasonable reading of Count Two to be a challenge to the current House District voting map, as most recently modified by H.B. 566. Under our reading, Count Two is not insufficient merely because the latest series of amendments did not modify every district on which the plaintiffs base their claims.

As to Secretary Kemp's second argument, he says that even if the plaintiffs have sufficiently alleged the Gingles preconditions, their claim can only survive a

14

motion to dismiss if "the circumstances in totality support a finding of vote dilution." Id. at 16 (quoting Johnson v. De Grandy, 512 U.S. 997, 1007–08, 114 S. Ct. 2647, 2655 (1994)).  And viewing the totality of the circumstances, the defendant says, "Plaintiffs have failed to sufficiently allege facts from which this Court could conclude that despite roughly proportional representation, the voting strength of African-American voters in this ten (10) county area is diluted by H.B. 566." Id.  We construe the facts alleged in the plaintiffs' favor, and as a result, this argument fails.

In De Grandy, the Supreme Court ruled that a districting scheme is not shielded from a Section 2 challenge merely because "the number of majority-minority districts reflected the minority's share of the relevant population." De Grandy, 512 U.S. at 1020, 114 S. Ct. at 2661.  Here, Secretary Kemp argues that the House districts have indeed been drawn proportionately, and the plaintiffs have not alleged sufficient other facts to make a plausible claim for vote dilution.  But "[p]roportionality is not a safe harbor for States," id. at 1026, 114 S. Ct. at 2664 (O'Connor, J., concurring), and the plaintiffs have alleged a number of other factors that the Supreme Court found relevant in their "totality of the circumstances" consideration of vote dilution.  For example, the Court described the necessity of a "searching practical evaluation of the past and present reality" if a court is to determine "whether the political processes are equally open." Id. at

15

1018, 114 S. Ct. at 2660 (majority opinion) (quotations omitted).  Plaintiffs allege a litany of devices historically used in Georgia to suppress minority voting.  Compl. ¶¶ 32–42.  Plaintiffs also allege racially divisive language was used in a number of recent elections.  Id. ¶¶ 43–47.  Finally, they discuss other types of discrimination faced by African-Americans residents of Georgia that limit their ability to participate in the political process.  Id. ¶¶ 48–53.

The Supreme Court has also told us that if a state uses different "line-drawing standards" in minority districts, the "inconsistent treatment might be significant evidence of a § 2 violation, even in the face of proportionality."  De Grandy, 512 U.S. at 1015, 114 S. Ct. at 2659.  Here, the plaintiffs allege that Georgia's 2011 redistricting map "packed Georgia's African-American voters into as few districts as possible," and that later changes to that map were made to protect white incumbents in districts with rapidly increasing African-American populations.  Compl. ¶¶ 7–8.  In De Grandy, the Supreme Court noted that the District Court, after a five-day trial, declined to make a finding that the state's district lines were drawn differently in minority neighborhoods.  512 U.S. at 1015, 114 S. Ct. at 2659.  That lack of a factual finding supported the Supreme Court's decision that the plaintiffs had not shown vote dilution.  Id. at 1015–16, 114 S. Ct. at 2659.  Here, in contrast, we are reviewing a motion to dismiss and must accept the facts plaintiffs have alleged as true.  See Rivell, 520 F.3d at 1309.  Doing so,

16

we find that the plaintiffs have sufficiently alleged that "the circumstances in totality support a finding of vote dilution." See De Grandy, 512 U.S. at 1008, 114 S. Ct. at 2655.  We therefore deny the defendant's motion with respect to Count Two.

## CONCLUSION

It is **ORDERED** that the motion to dismiss filed by the defendant, Doc. 47, is **GRANTED IN PART**.  Count One is dismissed without prejudice for failure to state a claim.  The defendant's motion as to Count Two is denied.